# LINDSAY LAND & LIVE STOCK CO. v. CHURNOS et al.

No. 4766.   Decided October 1, 1929.   (285 P. 646.)
Rehearing Denied February 28, 1930.

*E. A. Walton* and *Wilson & Barnes,* all of Salt Lake City, for appellant.

*Thatcher & Young,* of Ogden, and *W. E. Davis,* of Brigham, for respondents.

CHERRY, C. J.

The plaintiff, alleging that it was the owner and in possession of an extensive tract of uninclosed grazing lands in Cache county, and that defendants had driven and threatened to continue to drive large herds of sheep over and across the same, brought this action to enjoin defendants from trespassing on its lands, to quiet the plaintiff's title thereto and to recover damages sustained by trespasses thereon. The defendants justified driving their herds across the plaintiff's lands, and their right to continue doing so, by

alleging the existence of a public highway across the plaintiff's lands, along and upon which their herds had been, and in the future were intended to be driven.

The case was tried by the court without a jury. A judgment and decree was made and entered in favor of the defendants, from which the plaintiff has appealed.

The trial court made findings of fact, to the effect that about the year 1876 there was laid out over and across the lands in question, when the same were a part of the public domain, a certain described roadway or trail, which was thereafter, and up to the filing of this action, continually used as a public thoroughfare, and concluded that, because of said use, the same became and was dedicated and abandoned to the public as and for a public highway. There were further findings that during and between the years 1894 and 1904, the title to the lands in question passed from the United States to the plaintiff or its grantors, and that since that time the claimed highway had been used by the public generally for travel thereon, under a claim of right, continuously and adversely, and without interference or objection on the part of the owners of the land, etc.

The appeal presents several formal assignments of error, but the decisive question and the only one which needs to be considered is whether the evidence is sufficient to justify the findings respecting the existence of a public highway over the plaintiff's lands. The evidence is substantially uncontradicted and may be generally summarized as follows:

The lands over which the highway is claimed are uninclosed and uninhabited mountain lands, suitable only for grazing purposes, and situated near the southern border of Cache county. The road extends across the lands in a general easterly and westerly direction following a part of its distance through a narrow canyon or pass called Davenport canyon. At the eastern terminus of the road is a large area of mountain land valuable for grazing animals in the summer season, a portion of which is now the Cache National Forest, and a portion in private ownership. This area has

been extensively used for summer grazing for many years, by owners of sheep who trailed them over the route in question from the settled portions of the country lying to west, to the summer range in the spring of the year and back again in the fall. In 1876 a sawmill was constructed in Davenport canyon and the road in question was first definitely located and commenced to be used. People generally from the cities and villages in Box Elder and Cache counties approaching from the West traveled the road for the purpose of hauling lumber from the sawmill, and others from Ogden City and Ogden Valley, who had access to the eastern terminus of the road in question, used it for similar purposes. Other sawmills were set up at different places along the road during the years before 1890, and the road was generally traveled by many persons who had occasion to do so for the purpose of hauling logs to the sawmills and hauling lumber and slabs therefrom, and going to and from the sawmills for other purposes. In about the year 1885 a mining excitement in the locality resulted in the establishment of a mining camp called La Plata near the road in question. Houses were built, a post office established, and several hundred people resided in the camp for five or more years. During this period the road in question was traveled extensively by the general public in going to and from the mining camp. During all of the time from 1876 until shortly before the commencement of this action the road was used by numerous owners of sheep who had occasion to go that way for the purpose of trailing their herds to and from the summer range, and for the purpose of moving their camps and supplies to their herds. The use of the road for this purpose was general and extensive. One witness stated that "there must have been a hundred herds that went up there," another that he had "seen as high as seven herds a day" going over the road. The mining business ceased in about the year 1890 and a few years later the saw mills disappeared. From since about the year 1900 the use of the road has been confined to stockmen driving their herds and haul-

ing their supplies and camp outfits over it, and to a less frequent use by hunters, fishermen, and others who had occasion to travel over it. At times bridges were built and short dugways constructed by persons directly interested, but it does not appear that any public money was ever expended to maintain or repair the road. During the last four or five years the road in places has become impassable to ordinary vehicles and has been used only for driving animals, pack outfits, etc., over it. Before the year 1894 the lands traversed by the road were unappropriated public lands of the United States. During the period of 1894 to 1904 the title to the lands passed from the federal government to the plaintiff or its grantors. The use of the road as above described was not interrupted by the change in the title or ownership of the lands, but continued thereafter as before stated. There was evidence that the travel over the road did not always follow an identical or uniform line, but at times and in a few places varied somewhat therefrom, and that sheep when trailing across would sometimes depart from the line of the road. There was ample positive evidence, however, that the road as described by the findings and decree was substantially the line and course of the road as it had been traveled and used for more than fifty years.

Respecting the width of the road the witnesses who testified upon the subject varied in their estimations. One witness thought the road used was from two to four rods wide; another from three to five rods wide; another stated it as being one hundred feet or possibly a little more in width; while a witness for plaintiff stated that herds of sheep while trailing through occupied a space of two hundred yards on each side of the road. The trial court found and concluded that the road as established was one hundred feet in width.

The appellant contends that the claim of a public highway made by the defendants and decreed by the court cannot be sustained because the evidence does not establish a dedication of the highway nor justify a finding that the highway was created by prescription. It is further contended that the

decree of the court adjudging the highway to be one hundred feet in width was arbitrary and without support in the evidence.

The trial court determined that the highway existed, both by dedication and prescription. Its decree that the highway exists must be sustained if the evidence is sufficient to support the conclusion under either doctrine. As we are convinced that the court was justified, under the facts ■ in the case, in finding that the highway had been created by dedication, it becomes unnecessary to consider the question of its existence by prescription.

By Act of Congress passed in 1866, Revised Statutes U. S. § 2477 (43 USCA § 932) it was provided:

"The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

"By this act" said the court in *Streeter* v. *Stalnaker*, 61 Neb. 205, 85 N. W. 47, 48, "the government consented that any of its lands not reserved for a public purpose might be taken and used for public roads. The statute was a standing offer for a free right of way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established."

It has been held by numerous courts that the grant may be accepted by public use without formal action by public authorities, and that continued use of the road by the public for such length of time and under such circumstances as to clearly indicate an intention on the part of the public to accept the grant is sufficient. *Montgomery* v. *Somers*, 50 Or. 259, 90 P. 674; *Murray* v. *City of Butte*, 7 Mont. 61, 14 P. 656; *Hatch Bros.* v. *Black*, 25 Wyo. 109, 165 P. 518; *Sprague* v. *Stead*, 56 Colo. 538, 139 P. 544. Other decisions are to the effect that an acceptance is shown by evidence of user for such a length of time and under such conditions as would establish a road by prescription, if the land over which it passed had been the subject of private ownership. *Okanogan Co.* v. *Cheetham*, 37 Wash. 682, 80 P. 262, 70 L.

R. A. 1027; *City of Butte* v. *Mikosowitz,* 39 Mont. 350, 102 P. 593, or of public user for such time as is prescribed in state statutes upon which highways are deemed public highways. *McRose* v. *Bottyer,* 81 Cal. 122, 22 P. 393; *Schwerdtle* v. *Placer County,* 108 Cal. 589, 41 P. 448; *Walcott Tp.* v. *Skauge,* 6 N. D. 382, 71 N. W. 544; *Great N. R. Co.* v. *Viborg,* 17 S. D. 374, 97 N. W. 6. See, also, annotation on necessity and sufficiency of acceptance, L. R. A. 1917A, 355.

In the territory of Utah, the statutes in force during the times in question were as follows: Chapter 29, Laws of Utah 1880, provided:

"Sec. 2. Highways are roads, streets or alleys and bridges laid out or erected by the public, or if laid out or erected by others, dedicated or abandoned to the use of the public.

"Sec. 3. Roads laid out and recorded as highways by the County Court, and all roads used as such for a period of five years, are highways. * * * "

By chapter 12, Laws of Utah 1886, § 2, it was enacted:

"All roads, streets, alleys and bridges laid out or erected by others than the Public and dedicated or abandoned to the use of the public are highways. A highway shall be deemed and taken as dedicated and abandoned to the use of the Public when it has been continuously and uninterruptedly used as a Public thoroughfare for a period of ten years."

In this case the court found as a fact that, while the lands traversed by the road were public lands of the United States the road was used as a public thoroughfare for the period from 1876 to 1894, a time in excess of that required by the territorial statutes in force for creating a public highway by use. That finding, if supported in fact, is sufficient in law to amount to an acceptance of the congressional grant of the right of way over the public lands, and thus would constitute and create the road in question a public highway by dedication.

It is contended, however, that the use of the road, as proved, was not such as amounted to a continuous and un-

interrupted use as a public thoroughfare. And in this connection it is argued that the uses made of the road for sawmill and mining purposes were of a temporary character, and the use of it for trailing sheep was infrequent and occasional and over an uncertain course.

We think the evidence established a general public use of the road. If the claim rested alone upon the use of the road for sawmill purposes, or for mining purposes, or for the trailing of sheep, the question would be more difficult. But here the road connected two points between which there was occasion for considerable public travel. The road was a public convenience. When sawmills were established on or near the road, it was used, not only by those conducting the sawmills, but by many others who went to the sawmills to get lumber, etc. During the period when the mining camp existed in the vicinity, the road was unquestionably used very extensively by the general public for general purposes. And all the time it was used as a general way for the driving or trailing of sheep. This latter use was not by a few persons, but by many persons, and it involved more than the mere driving of animals on the road. Camp outfits and supplies accompanied the herds and were moved over the road in camp wagons and on pack horses. While it is difficult to fix a standard by which the measure what is a public use or a public thoroughfare, it can be said here that the road was used by many and different persons for a variety of purposes; that it was open to all who desired to use it; that the use made of it was as general and extensive as the situation and surroundings would permit, had the road been formally laid out as a public highway by public authority. We therefore conclude that the court was justified in finding that the road had been continuously and uninterruptedly used as a public thoroughfare for more than ten years.

With respect to the certainty of the line or course of the road, the evidence was also sufficient to support the decree. While the public cannot acquire a right by use to pass over

a tract of land generally, but only in a certain line or way, it is not indispensable to the acquisition of the right that there should be no deviation in the use from a direct line of travel. If the travel has remained substantially unchanged, and the practical identity of the road preserved, it is sufficient, although there may have been slight deviations from the common way to avoid encroachments, obstacles, or obstructions upon the road. See 13 R. C. L. 37.

We further approve the findings and conclusion of the court as to the width of the road. Under all of the evidence the court was justified in fixing the width of the road at one hundred feet. There was evidence that more than this width had been actually used. And it was a legitimate conclusion from all of the evidence that a road of the width was reasonable and necessary for the purposes for which the road was used. It was proper and necessary for the court in defining the road to determine its width, and to fix the same according to what was reasonable and necessary, under all the facts and circumstances, for the uses which were made of the road. See *Montgomery* v. *Somers,* supra; *Bishop* v. *Hawley,* 33 Wyo. 271, 238 P. 284; *Whitesides* v. *Green,* 13 Utah 341, 44 P. 1032, 57 Am. St. Rep. 740.

JUDGMENT AFFIRMED.

STRAUP, ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.