## JEREMY v. BERTAGNOLE et al. (SUMMIT COUNTY et al., Intervenors).

No. 6216.   Decided August 26, 1941.   (116 P. 2d 420.)

Rehearing Denied November 11, 1941.

See 18 C. J. Dedication, sec. 132; 25 Am. Jur., 359.

*Harley W. Gustin* and *William H. Folland,* both of Salt Lake City, for appellant.

*Stephens, Brayton & Lowe,* of Salt Lake City, and *P. H. Neeley,* of Coalville, for respondents.

McDONOUGH, Justice.

Appeal from a judgment in favor of defendants and interveners, respondents here, and against appellant.

The action was brought to enjoin defendants from trespassing over lands of appellants in Summit and Morgan Counties. The particular trespass alleged was the driving of

some 2,700 head of sheep over such lands in June, 1938. Prior trespasses thereto and threatened future trespasses, unless enjoined, were averred. Defendants by their answer admitted that in June, 1938, and at divers other times prior thereto they had driven sheep across appellant's lands, but alleged that they drove them over a public road over such lands, which road was acquired or established by user by the public and by dedication and abandonment to the public as a highway. By their counterclaim defendants asked that the road in question be by the court decreed a public highway for use by the public for all purposes and that plaintiff be restrained from in any manner interfering with the free and unobstructed use thereof by the defendants and the public generally.

Summitt County and Morgan County filed complaints in intervention whereby each adopted the position taken by defendants and prayed the same relief, asking that the court by its decree fix the width of the highway at eight rods. The judgment entered dismissed the complaint of plaintiff and decreed the road in question to be a public road. It fixed the width thereof reasonably necessary for public use as sixty feet for a small fenced portion of its length and as five rods for the remaining portion.

Appellant conceded at the time of trial, and here makes the same concession, that a right-of-way by prescription had been acquired across his lands along the road in question but contends here, as he did in the court below, that such right-of-way was to a roadway of not to exceed 16 feet in width, the use of which should be limited to pedestrian and vehicular traffic and that its use to a greater width and for the driving of livestock should be enjoined. His assignments of error attack the findings and conclusions of the trial court which run counter to this contention.

By its findings of fact the trial court found that the road in question is, and for more than 60 years has been, a well traveled, worked, and defined public road, the center line of which is by the findings particularly described; that said

road forms a part of the public road system of Summit and Morgan Counties and of that of the State of Utah, commencing with State Highway, U. S. 30-S on the north and with State Highway, U. S. 40-530 on the south; that it is, and had been for 60 years, continuously used by ranchmen, stockmen, owners of land contiguous and adjacent thereto and by the public generally for all necessary and convenient purposes, including pedestrian, equestrian, and vehicular traiffic, and the driving and trailing of horses, cattle and sheep and herds of each along the same; and "that by reason of such use said road has been dedicated and abandoned to the public as a public road."

The findings further recite that the title to the several tracts of land now patented, including those of the plaintiff over which the road passes, was deraigned from the United States on various dates between the years 1875 and 1910; that when each of said patents issued said road existed and was then and had been for many years used by the general public as a public road; that by an act of the Congress of the United States of 1866, 43 U. S. C. A. § 932, there was granted to the public the right of way for the construction of highways over public lands not reserved for public uses, and that the grant had been accepted by the public of the Territory and State of Utah. The court found, further, that all patents issued by the State of Utah to portions of the property owned by the plaintiff were issued subject to the easement and right of way of the public to use all such roads and highways as may have been established according to law. It found also that the road had been used continuously, openly, and under a claim of right by the general public for "more than twenty years last past," and that during all times (for the sixty-year period) it was open to all who desired to use it and that the use made of it was as general and extensive as the situation of said road and the surrounding country permitted, and as general and extensive as though it had been formally laid out as a public highway by public authority. The width of

the roadway established by the decree, as hereinabove recited, was found to be the width "which is reasonably necessary for the public convenience, travel and use for the purposes for which the public use the same."

Appellant summarizes his complaint as to the findings of fact and conclusions of law of the trial court thus:

"The main question, therefore, would seem to be whether or not, from the entire record, the respondents and general public have acquired a right-of-way or easement across appellant's lands to a greater width than 16 feet by prescription or otherwise. It is contended that the trial court arbitrarily and without sufficient or any evidence fixed the width of the first course as 60 feet and the width of the remainder as 5 rods."

He contends (1) that, under the evidence and the law applicable thereto, a public road or highway of the width decreed by the court over appellant's property does not exist by dedication or abandonment; and (2) that the evidence does not support the use of the road in question as contended by respondents.

Respondents' counter contentions are:

"(a) That a public highway is established by dedication under the laws of the United States and the applicable statutes of the Territory of Utah prior to U. S. patent of any of appellant's lands and that said patents were taken subject to the easement of such highway.

"(b) That the use of said Road since such dedication has been such, and for a period many times sufficient to establish a public highway by prescription.

"(c) All lands [here involved] acquired by patent from the State of Utah are expressly subject to the public easements theretofore existing across such lands.

"(d) A public highway already existing by dedication, prescription or both, its width must be fixed and determined by what is reasonable and necessary, under all facts and circumstances, for the uses made of the road."

The roadway involved, known as East Canyon road, follows substantially East Canyon creek as it flows northerly from the vicinity of the ranch house of the plaintiff situated

in Summit County on U. S. Highway 40, with which highway it connects. It extends from such highway down the creek and on to Morgan and Henefer on the north, crossing over mountains, rolling hills and flats, and through narrow canyons and ravines, its length being about 25 miles.

Under the evidence there can be no doubt whatever that it is a public road or highway. The court could not have reasonably found the contrary. The evidence discloses without contradiction that there existed a roadway or "trail" along the course of the present road as early as 1869. At that time it was apparent to William Archibald, a witness for defendants, that the roadway was in use.

In the case of *Lindsay Land & Live Stock Co.* v. *Churnos*, 75 Utah 384, 385, 285 P. 646, 647, with reference to a state of facts very like those here presented, this court stated:

"The trial court determined that the highway existed, both by dedication and prescription. Its decree that the highway exists must be sustained if the evidence is sufficient to support the conclusion under either doctrine. As we are convinced that the court was justified, under the facts in the case, in finding that the highway had been created by dedication, it becomes unnecessary to consider the question of its existence by prescription.

"By Act of Congress passed in 1866, Revised Statutes U. S. § 2477 (43 U. S. C. A. § 932) it was provided:

" 'The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.'

" 'By this act' said the court in *Streeter* v. *Stalnaker*, 61 Neb. 205, 85 N. W. 47, 48, 'the government consented that any of its lands not reserved for a public purpose might be taken and used for public roads. The statute was a standing offer of a free right of way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established.'

"It has been held by numerous courts that the grant may be accepted by public use without formal action by public authorities, and that continued use of the road by the public for such length of time and under such circumstances as to clearly indicate an intention on the part of the public to accept the grant is sufficient. *Montgomery* v. *Somers.* 50 Or. 259, 90 P. 674; *Murray* v. *City of Butte*, 7 Mont. 61,

14 P. 656; *Hatch Bros.* v. *Black*, 25 Wyo. 109, 165 P. 518; *Sprague* v. *Stead*, 56 Colo. 538, 139 P. 544. Other decisions are to the effect that an acceptance is shown by evidence of user for such a length of time and under such conditions as would establish a road by prescription, if the land over which it passed had been the subject of private ownership. *Okanogan County* v. *Cheetham*, 37 Wash. 682, 80 P. 262, 70 L. R. A. 1027; *City of Butte* v. *Mikosowitz*, 39 Mont. 350, 102 P. 593, or of public user for such time as is prescribed in state statutes upon which highways are deemed public highways. *McRose* v. *Bottyer*, 81 Cal. 122, 22 P. 393; *Schwerdtle* v. *Placer County*, 108 Cal. 589, 41 P. 448; *Walcott Tp.* v. *Skauge*, 6 N. D. 382, 71 N. W. 544; *Great N. R. Co.* v. *Viborg*, 17 S. D. 374, 97 N. W. 6. See, also, annotation on necessity and sufficiency of acceptance, L. R. A. 1917A, 355.

"In the territory of Utah, the statutes in force during the times in question were as follows: Chapter 29, Laws of Utah 1880, provided:

" 'Sec. 2. Highways are roads, streets or alleys and bridges laid out or erected by the public, or if laid out or erected by others, dedicated or abandoned to the use of the public.

" 'Sec. 3 Roads laid out and recorded as highways by the County Court, and all roads used as such for a period of five years, are highways. * * *'

"By chapter 12, Laws of Utah 1886, § 2, it was enacted:

" 'All roads, streets, alleys and bridges laid out or erected by others than the Public and dedicated or abandoned to the use of the public are highways. A highway shall be deemed and taken as dedicated and abandoned to the use of the Public when it has beeen continuously and uninterruptedly used as a Public thoroughfare for a period of ten years.'

"In this case the court found as a fact that, while the lands traversed by the road were public lands of the United States the road was used as a public thoroughfare for the period from 1876 to 1894, a time in excess of that required by the territorial statutes in force for creating a public highway by use. That finding, if supported in fact, is sufficient in law to amount to an acceptance of the congressional grant of the right of way over the public lands, and thus would constitute and create the road in question a public highway by dedication."

In addition to the evidence adduced as to the existence of a roadway in 1869 some thirteen witnesses testified to the use of the road for vehicular and other traffic between 1877 and 1900, and an equal number as to its use since the

latter date. Under the laws of 1880 and 1886, quoted supra, there is unquestionably abundant evidence to support the trial court's finding or conclusion that the roadway was dedicated and abandoned to the use of the public as a public highway.

We do not understand appellant to contend otherwise, though he makes his concession on the basis of a prescription right to use of the way. As hereinabove stated, his objection to the judgment below, and the findings upon which it is based, goes to the use of the way by any traffic to a greater width than 16 feet and to any use for the purpose of trailing or driving sheep or other herds of livestock.

It is clear from the evidence that if the finding of the court to the effect that the road had been continuously used for more than the requisite period to establish dedication for the driving and trailing of herds of cattle, horses, and especially sheep along it, the width of five rods fixed by the court as the width which is reasonably necessary for the public convenience, travel, and use for the purpose for which the public use (have used) the same is not excessive. We shall hereafter refer to the evidence adduced as to the use of the road for the purpose of driving stock. Before doing so, however, it is proper to observe that even as to pedestrians and vehicular traffic, where the evidence establishes dedication of a roadway as in this case, the width of such roadway is not to be by the court measured by the boundaries of the beaten track. "It was proper and necessary for the court in defining the road to determine its width, and to fix the same according to what was reasonable and necessary, under all the facts and circumstances, for the uses which were made of the road." *Lindsay Land & Live Stock Co.* v. *Churnos,* supra. In *Whitesides* v. *Green,* 13 Utah 341, 44 P. 1032, 1033, 57 Am. St. Rep. 740, in discussing the question here involved, this court said:

"Counsel for the appellant appear to insist that the public have only a right to travel on the beaten path, and must be confined to one

rod in width. We cannot agree with counsel that, where the public have acquired the right to a public highway by user, they are limited to such width as has actually been used by them. Generally, the greater part of the travel on a county highway is doubtless confined to the track made by vehicles, but there must be room enough for travelers with wagons, carriages, or implements to pass each other, and for necessary improvements and repairs to be made so as to keep it in a suitable condition. The right acquired by prescription and use carries with it such width as is reasonably necessary for the public easement of travel, and where the public have acquired the easement the land subject to it has passed under the jurisdiction of the public authorities, for the purpose of keeping the same in proper condition for the enjoyment thereof by the public. Such authorities are bound to keep the road open and in suitable repair, and, if obstructions be placed thereon, it is their duty to remove the same, and care for the rights of the public. * * * The purpose for which the easement was acquired must determine the effect of the right parted with by the owner, and the width necessary for the enjoyment of the highway by the public. Where the easement is acquired by prescription or use such width must be determined from a consideration of the facts and circumstances peculiar to the case because in such event the court cannot say that in law the highway is of a certain width, in the absence of statutory provisison. * * * Whatever may be the width in any particular case, the easement cannot be limited, when acquired by user, to the actual beaten path."

Hence, while it is true as contended by appellant, that where dedication is established by user the use to which the way has been put measures the extent of the right to use, this limitation goes to the kind of use. A particular use having been established, such width should be decreed by the court as will make such use convenient and safe. A bridle path abandoned to the public may not be expanded, by court decree, into a boulevard. On the other hand, the implied dedication of a roadway to automobile traffic is the dedication of a roadway of sufficient width for safe and convenient use thereof by such traffic.

In the instant case, the evidence of the use of East Canyon road by automobile traffic for a period of time sufficient under the statute was definitely established. In fact there seems to have been no contention to the contrary by plaintiff during the trial.

Twenty-eight witnesses were called by defendants who testified to the nature of the road and to the use thereof which they had observed, as well as the use which they had themselves made of the road. With respect to the use thereof for herding sheep and cattle, William Archibald testified that he observed sheep and cattle using it in the early seventies. He worked out poll tax on the road forty years ago. Use of the road by sheep made work on the road necessary.

Testimony of the other witnesses was to the effect that at various times they drove sheep and cattle along the trail. Such testimony covers a period from the 1870's to the time of trial. True, such testimony does not reveal that any witness used the road at weekly, monthly, or even yearly intervals over a period of ten years but from the evidence adduced the inference is clearly a reasonable one that the road was used for the driving of cattle and sheep for a number of years in excess of that required, whenever it was necessary or convenient for the members of the public who were engaged in raising or herding stock to so use it.

It would unduly extend this opinion to set out the evidence in support of the finding of the trial court to this effect. Suffice it to say that it was sufficient. And from the whole record, we think the inference reasonable that such use was adverse. While appellant testified ■ that the use was permissive as to some of those seen by witnesses to have used the road, practically all witnesses testified that their own use of the way was use as a public road and in effect as of right. True, as to the use which they observed others making of the road, such use would be presumed a permissive use, absent evidence to the contrary. Nevertheless, the court should consider all the circumstances and conditions connected with such observed user in determining whether, as to such use by others than witnesses, the presumption stood at the close of the case unimpaired. Among those conditions and circumstances was the existence for many years of this roadway, openly used as the

public might desire for vehicular, pedestrian, and equestrian traffic, its connection with other through highways and publicly used sheep trails in the vicinity, and the non-permissive user of the road for the driving of sheep by the witnesses themselves.

Nor do we believe that any useful purpose would be served in discussing in detail the authorities cited by appellant. They support the doctrine that a private easement acquired by user is limited to the use made of the servient estate during the prescriptive period; that though one may have a prescriptive right for a limited purpose, that right cannot be enlarged by subjecting the servient estate to a greater burden, unless the increased use itself continue for the prescriptive period; and that the burden of proof of adverse user over the prescribed period of time is on him who asserts a right by virtue of such user.

Such rules are settled doctrine in this jurisdiction and are elsewhere uniformly recognized. We are of the opinion that the evidence supports the findings of the trial court as to user of the road, that under the law of this jurisdiction the court did not err in decreeing it to be dedicated as a public way nor in fixing its width as by the decree provided.

The decree of the lower court is affirmed. Costs to respondent.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.