Ralph MEMMOTT, et al., Plaintiffs
and Appellants,

v.

Evan ANDERSON, et al., Defendants
and Respondents.

Ralph MEMMOTT, Grace Memmott, Sandra Memmott, Marie Memmott, Merrill G. Memmott, Amelia Saunders, Dallie M. Talley, Carolyn Sue M. Bushnell, and Ralph Memmott, dba Bali Hai Stone, Plaintiffs and Respondents,

v.

Evan ANDERSON, Dexter Anderson, Fillmore Products, Inc., and Red Dome, Inc., and Ralph W. Morrison, Lavonne Morrison, Willis Morrison, J. A. Morrison, Jr., Charlotte Morrison, Devon Development, Inc., and Buehner Block Company, Defendants and Appellants.

No. 17192, 17193.

Supreme Court of Utah.

March 3, 1982.

Dave McMullin, Payson, for Ralph Memmott.

Dexter Anderson, Fillmore, for Evan Anderson.

STEWART, Justice:

This case presents two appeals from the judgment of the Fifth District Court adjudicating claims to two roads located in Millard County, Utah, and a claim of boundary by acquiescence relating to mining properties in the same general area.[1]

Defendants Ralph W. Morrison, Lavon Morrison, J. A. Morrison, Jr., and Charlotte Morrison are sellers of the majority ownership interest in exclusive mining rights to Red Dome mining claims in Millard County. Defendant Beuhner Block Company is the owner of a minority interest in the Red Dome claims. Defendants Evan Anderson and Dexter Anderson are officers and stockholders of Fillmore Products, Inc. and Red Dome, Inc., a company which is purchasing a majority ownership interest in the Red Dome Claims and exclusive mining rights which the Morrisons hold. Millard County requested and obtained status as a defendant in intervention in this action. Plaintiff Ralph Memmott, doing business as Bali Hai Stone, is the owner of unpatented placer mining claims adjacent to those of the above-named defendants. The remaining plaintiffs are joint mining claim owners, along with Ralph Memmott, of the Bali Hai mining claims.

1. Both plaintiffs and defendants have taken separate appeals from the same decree. We treat the appeals together as if there was an appeal and cross-appeal but refer to each by its case number on appeal.

In No. 17192 Memmott appeals from a decree of the district court 1) that a road known and hereafter referred to as the Northwest Road, which is conceded to be a public road, may be relocated approximately 1,800 feet to the north and 2) that a road known and hereafter referred to as the South Road is a public road. Plaintiffs were directed to remove a gate erected by them across the South Road.

In No. 17193 defendants appeal from that portion of the decree establishing that certain boundaries to their Red Dome Claims Nos. 5 and 7, different from the boundaries in the legal description, were established by acquiescence. Defendants also appeal the determination by the district court that the width of the South Road should be 16 feet rather than 22 feet.

## NORTH ROAD

The first issue relating to the North Road is whether Memmott has standing to enjoin the relocation of the North Road on a parcel not owned by Memmott. Relocation of this concededly public road on defendants' mining claims was necessitated when unknown persons mined too close to the existing road bed, resulting in a potentially dangerous condition. Defendants at first built a slight detour around the undermined area. The section of the road in question is entirely on defendants' Red Dome Claims, and the relocation has the effect of causing Memmott to travel 1,800 feet more to reach his mining claims than if the road had not been relocated.

Defendants maintain Memmott has no standing to enjoin relocation of the road because he is not an abutting landowner. Memmott contends that he has standing by virtue of the injury that he, apart from the general public, will suffer by having to travel an additional 1,800 feet to and from his mining claim. He also asserts that, as the owner of mining claims abutting the road at a point removed from the relocation area, he has a private easement which precludes relocation of any part of the road without his consent.

Memmott's right of access is not unlimited. Even as an abutting landowner he would only have had a right of reasonable ingress and egress under all the circumstances. *Ray v. State Highway Commission*, 196 Kan. 13, 410 P.2d 278 (1966), cert. denied, 385 U.S. 820, 87 S.Ct. 43, 17 L.Ed.2d 57; *City of Louisville v. Kerr*, Ky., 403 S.W.2d 30 (1966); *W.E.W. Truck Lines, Inc. v. State, Department of Roads*, 178 Neb. 218, 132 N.W.2d 782 (1965). A property owner does not have the right to the most direct route possible from his land to his destination. *Jacobson v. State, State Highway Commission*, Me., 244 A.2d 419 (1968). As long as he has reasonable access to his property and his means of ingress and egress are not substantially interferred with, he has no cause to complain. *City of Phoenix v. Wade*, 5 Ariz.App. 505, 428 P.2d 450 (1967).

The closing of a road and the providing of a new road which requires a landowner to travel 1,800 feet farther than before to reach his property does not constitute a deprivation of reasonable access to the public roads. *City of Louisville v. Kerr, supra*. The minimal diversion caused by the relocation which was done for the safety of the public and for those having mining claims in the area, including plaintiffs, does not rise to the level of interference with the property rights of even an abutting landowner.

Furthermore, Memmott urges that defendants should be enjoined from relocating the road on their own initiative without authority from the County Commission. It is true that authority to relocate a public road does not lie with a private citizen. See §§ 17–5–38, 27–12–22, 27–12–25, 27–12–102.1, 27–12–102.2, Utah Code Ann. (1953), as amended. However, Millard County, an intervening party defendant, has not objected to the relocation of the road, and Memmott cannot assert the rights of the County.

The judgment of the district court that the North Road was properly relocated is therefore affirmed.

## SOUTH ROAD

Plaintiffs maintain that there was insufficient evidence for the district court to adjudge that the South Road is a public road. The term "Public Highway" is defined in § 27–12–2(8) as:

> Any road, street, alley, lane, court, place, viaduct, tunnel, culvert, or bridge laid out or erected as such by the public, or dedicated or abandoned to the public, or made such in any action for the partition of real property, and includes the entire area within the right of way.

█ It appears that the gate across the South Road was erected by plaintiffs in 1961. Plaintiffs place great reliance on the existence of the gate in showing that the road is not a public road. However, if the road were public before the gate was erected, the erection of the gate does not change the public nature of the road. See *Sullivan v. Condas*, 76 Utah 585, 290 P. 954 (1930).

█ As to the public or private nature of the road, plaintiffs review only their evidence that the road is private, i.e., primarily the testimony of plaintiff Ralph Memmott. They ignore the evidence in the record supporting the district court's determination that the road is public. We conclude that there is substantial evidence to support the judgment of the district court.

The district court found that the road was in existence at least since 1940. Plaintiff himself testified that the South Road had been there "better than fifty years." However, since the road in question crossed several different mining claims, it is necessary to analyze the character of the road segment by segment.

The South Road leaves State Road 100 and proceeds southwesterly into plaintiffs' Cinder Crater Claim No. 8 and passes plaintiffs' gate. The record contains substantial evidence of public usage from at least 1940

and up until the gate was erected in 1961. That evidence is sufficient to establish dedication of the road as a public road. Section 27–12–89.[2] The same can be said of the portion of the road which runs across plaintiffs' Bali Hai Claim No. 4, a claim not filed until 1964. Since defendants maintain that the entire road is a public road, it is clear that those segments of the South Road which are located on defendant's Red Dome Claims have been dedicated by defendants to the public use. As to a newer section of the road which runs across plaintiffs' Bali Hai Claim No. 4, the record reflects that it, along with other new sections, was built by Millard County to provide public access to certain volcanic craters. Although the new section of the road was constructed in 1961, plaintiffs' Bali Hai Claim No. 4, as noted before, was not filed until 1964. Thus, the road was "erected ... by the public," § 27–12–1(8), in 1961 and was built on federal public land. Congress granted a right-of-way for the construction of highways on public land by 43 U.S.C. § 932.[3] That section has uniformly been interpreted as making an offer of a free right-of-way over the public domain. The offer could be accepted in any appropriate way authorized by state law. See, e.g., *Lindsay Land & Live Stock Co. v. Churnos*, 75 Utah 384, 285 P. 646 (1929). Here, the offer was accepted by Millard County by building the road. Therefore, the district court did not err in declaring the South Road a public road, and its decree to that effect is affirmed.

## BOUNDARY BY ACQUIESCENCE

█ In 1955 or 1956 defendants' predecessors in interest set out monuments near the southeast and southwest corners of Red Dome No. 7 and all four corners of Red Dome No. 5 claims. A survey of the claims had been made, apparently earlier in 1955.

---

**2.** That section states:
> A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of 10 years.

**3.** That section states:

> The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.

This section was repealed October 21, 1976, by Pub.L. 94–579, Title VII, § 706(a), 90 Stat. 2793.

Sometime during 1955 or early 1956 an action was commenced in the district court for Millard County involving a boundary dispute over the Red Dome Claims. Defendants' predecessors in interest were plaintiffs in that action and plaintiffs here were defendants there. On April 10, 1956, an order was entered in that action pursuant to stipulation of the parties which set out the boundaries of the Red Dome Claims and restrained defendants (plaintiffs here) "from trespassing upon, asserting claims to, or in any manner interfering with the quiet possession of property owned by the Plaintiffs [the predecessors in interest of defendants here]."

By way of their amended complaint, plaintiffs here assert that there was a boundary dispute between plaintiffs and defendants concerning Red Dome Claims Nos. 5 and 7. The district court found that boundary by acquiescence was established as to boundaries different than the true boundary established pursuant to prior land surveys. No mention was made by the district court of a prior action quieting title to the Red Dome Claims in defendants in this case.

Defendants maintain, and we agree, that the prior action precludes plaintiffs from asserting the existence of a different boundary than the one described in the prior order. Under long-settled principles of res judicata, once an issue has been finally adjudicated, the matter is settled once and for all and subsequent relitigation of the matter is barred. See, e.g., *International Resources v. Dunfield*, Utah, 599 P.2d 515 (1979). Here the very issue of the location of the various Red Dome Claims was previously litigated between these parties or their privies. It was therefore improper for the district court to retry those issues in this action.

Furthermore, the order of the district court in the prior matter affirmatively restrained plaintiffs here or their privies from "asserting claims to, or in any manner interfering with the quiet possession of property" now owned by these defendants. Therefore, the judgment of the district court relating to the issue of boundary by acquiescence must be reversed, and that portion of plaintiffs' amended complaint relating to the boundary of the Red Dome Claims in issue should be dismissed.

## WIDTH OF THE SOUTH ROAD

■ Finally, defendants maintain that the district court erred in ordering that the width of the South Road should be 16 feet rather than 22 feet. Generally, the width of a public road is determined according to what is reasonable and necessary under all the facts and circumstances. *Lindsay Land & Live Stock Co. v. Churnos*, 75 Utah 384, 285 P. 646 (1929). See also *Jeremy v. Bertagnole*, 101 Utah 1, 116 P.2d 420 (1941). Once the district court has made a determination, it will not be disturbed if suported by substantial evidence.

■ However, a careful review of the record herein reveals no evidence concerning the reasonable and necessary width of the South Road. We are simply unable to discover upon what basis the district court determined that the width of the road should be 16 feet. This matter is therefore remanded to the district court for supplementation of the record or for the making of further findings so that it can be determined why a width of 16 feet is appropriate.

Affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion. Costs to defendants.

OAKS, J., and J. ALLAN CROCKETT, Retired Justice, concur.

HALL, C. J., and HOWE, J., concur in the result.

MAUGHAN, J., did not participate herein; CROCKETT, Retired Justice, sat.