2010 UT App 112

**HAYNES LAND & LIVESTOCK CO., Plaintiff, Appellant, and Cross-appellee,**

v.

**JACOB FAMILY CHALK CREEK, LLC; Catherine B. Christensen, LLC; and Brian Garff, Defendants, Appellees, and Cross-appellants.**

Jacob Family Chalk Creek, LLC; Catherine B. Christensen, LLC; and Brian Garff, Counterclaim Plaintiffs, Appellees, and Cross-appellants,

v.

Haynes Land & Livestock Co.; Triple H. Ranch, LC; and Chalk Creek–Hoytsville Water Users Corp., Counterclaim Defendants, Appellants, and Cross-appellees.

**Triple H. Ranch, LC, Plaintiff and Appellant,**

v.

Fern J. Boyer; Gerald G. Boyer; Gregory J. Boyer; J.S. Hansen; Helen W. Blonquist; Alfred C. Blonquist; Karel J. Snyder; Barbara Hall; and Kevin Hall, Defendants, Third-party Plaintiffs, and Cross-appellants,

v.

Haynes Land & Livestock Co.; Chalk Creek–Hoytsville Water Users Corp.; and Summit County, Third-party Defendants and Cross-appellees.

No. 20080858–CA.

Court of Appeals of Utah.

May 6, 2010.

Ray G. Martineau, Anthony R. Martineau, and Brett D. Cragun, Salt Lake City; and Leslie W. Slaugh, Provo, for Appellants and Cross-appellees.

Jonathan O. Hafen and Bryan S. Johansen, Salt Lake City; David L. Thomas and Jami R. Brackin, Coalville; David R. Brickey, Park City; and Brent A. Bohman, Morgan, for Appellees and Cross-appellants.

Before Judges ORME, THORNE, and VOROS.

## OPINION

THORNE, Judge:

¶ 1 Haynes Land & Livestock Co. (Haynes) appeals from the district court's judgment determining the status of a roadway or trail that crosses land owned by various parties to this litigation. Jacob Fam-

ily Chalk Creek, LLC; Catherine B. Christensen, LLC; and Brian Garff (collectively, the Jacobs) and Fern J. Boyer, Gerald G. Boyer, Gregory J. Boyer, J.S. Hansen, Helen W. Blonquist, and Alfred C. Blonquist (collectively, the Boyers) cross-appeal. We affirm the district court's judgment in part, and in part reverse and remand.

## BACKGROUND

¶ 2 This matter involves a long-established roadway or trail (the Roadway) located in Summit County, Utah that crosses land owned by Haynes (the Haynes Property), the Jacobs (the Jacob Property), and the Boyers (the Boyer Property). The Roadway begins at State Road 133 and heads generally south, forming the rough shape of a loop or noose. The Roadway crosses onto the Haynes Property about one quarter mile from its starting point and travels generally southward until it reaches the Jacob Property. We refer to this portion of the road as the Bench Road.[1] Once the Roadway crosses onto the Jacob Property, we refer to it as the Middle Fork Road, and this portion of the road travels southeasterly until it turns back in a northeasterly direction. The Roadway then crosses onto the Boyer Property, where we refer to it as the Boyer Road. The Boyer Road crosses a reservoir (Boyer Lake) and eventually returns to the Haynes Property. Once back on the Haynes Property, the Roadway curves back to the north and west to close the loop where it rejoins the Bench Road. This final segment of the Roadway is referred to as the East Fork Road.

¶ 3 Litigation commenced in 1998 when Haynes sued the Jacobs seeking a determination that the Jacobs had no rights of travel over the Haynes Property beyond those afforded by existing recorded easements. Haynes also sought to enjoin the construction of a sizable building on the Jacobs Property. The Jacobs counterclaimed to establish that roads over the Haynes Property, including portions of the Roadway, were public roads or were subject to easements in favor of the Jacobs.

---

1. We adopt the district court's terminology for      the various segments of the Roadway.

¶ 4 In a separate matter, Triple H. Ranch, LC, a company with the same principals as Haynes, sued the Boyers, seeking the partition by sale of certain properties owned by the Boyers near Boyer Lake, including the Boyer Property. The Boyers counterclaimed, and eventually both Summit County (the County) and Chalk Creek–Hoytsville Water Users Corp. (the Water Users) were joined as parties to the litigation. The parties' various claims and counterclaims in the second lawsuit also implicated the Roadway's public or private status, and the two lawsuits were consolidated into this single action.

¶ 5 The district court held a four-day bench trial in March 2008. Much of the testimony was directed toward establishing the historical use of the Roadway by the public dating back as far as the late 1800s, as well as more recent attempts by the various private landowners to prevent public use of the portions of the Roadway that cross their lands. In light of the time periods involved, the district court also considered a great deal of historical documentary evidence, including maps.

¶ 6 On March 21, the district court issued its eighty-three-page Memorandum Decision on the status of the Roadway. In brief, the district court determined that the Bench Road, most of the Middle Fork Road, and the northern portion of the East Fork Road from its junction with the Bench Road had been dedicated to the public and were public roadways. The district court determined that the last half-mile or so of the Middle Fork Road before it reached the Boyer Property, the Boyer Road, and the southern portion of the East Fork Road remained private roads in the possession of the respective landowners, and declared that the Water Users had established a prescriptive easement over the Boyer Road. The court also discussed the proper width of the public roadways, stating that it would set the width of the roads at eighteen feet if it were to make the decision but delegating or deferring the road width decision to the County pursuant to the court's interpretation of Utah Code section 72–5–108, *see* Utah Code Ann. § 72–5–108 (2009) ("The width of rights-of-way for public highways shall be set as the highway authori-

ties of the state, counties, or municipalities may determine for the highways under their respective jurisdiction.").

ISSUES AND STANDARDS OF REVIEW

¶ 7 Haynes, the Jacobs, and the Boyers challenge the district court's determinations that some portions of the Roadway were public while others remained private. We review the district court's decision regarding whether a public highway has been established for correctness but grant the court significant discretion in its application of the law to the facts. *See generally Utah County v. Butler*, 2008 UT 12, ¶ 9, 179 P.3d 775. Additionally, we review the district court's factual findings only for clear error. *See Wasatch County v. Okelberry*, 2008 UT 10, ¶ 8, 179 P.3d 768.

¶ 8 Haynes argues that the district court erred when it refused to quiet title to the Haynes Property in Haynes as against all other potential road claims across the Haynes Property not litigated in this matter. Determination of the proper scope of a quiet title action presents a legal question that we review for correctness. *See id.; Salt Lake City v. Silver Fork Pipeline Corp.*, 2000 UT 3, ¶ 18, 5 P.3d 1206 ("A quiet title action requires the application of a rule of law to decide ownership of the property in question.").

¶ 9 Haynes also argues that the district court erred when it delegated or deferred the task of determining the width of public roads on the Haynes Property to the County pursuant to Utah Code section 72–5–108. " 'The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion[s].' " *Ellison v. Stam*, 2006 UT App 150, ¶ 16, 136 P.3d 1242 (alteration in original) (quoting *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998)).

¶ 10 Finally, the Boyers argue that the Water Users failed to plead a prescriptive easement across the Boyer Property and that the issue was not litigated by the express or implied consent of the parties. *See generally* Utah R. Civ. P. 15(b) ("When issues not

raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Accordingly, the Boyers argue that the district court erred when it declared such an easement. We review a district court's application of rule 15(b) of the Utah Rules of Civil Procedure for correctness but grant it a "fairly broad measure of discretion" in determining whether a particular issue was tried by the parties' implied consent. *See Keller v. Southwood N. Med. Pavilion*, 959 P.2d 102, 105 (Utah 1998).

## ANALYSIS

### I. Public Road Findings and Conclusions

█ ¶ 11 As stated above, the district court did not rule on the status of the Roadway as a whole. Rather, it determined that some portions of the Roadway were public while other portions remained private. Haynes, the Boyers, and the Jacobs dedicate a significant amount of briefing to challenging those aspects of the district court's ruling with which they are dissatisfied.

¶ 12 The district court's public roadway ruling determining that the Bench Road, the bulk of the Middle Fork Road, and a portion of the East Fork Road are public was based primarily on historical maps showing those roadways to have been well established as far back as 1875, long prior to any private ownership of the lands in question.[2] The district court stated,

[T]he demonstrable depiction of the Bench Road and Middle Fork Roads, to some point within Section 4 T2 R8, shows a road was created and use[d]. It is only logical that these two portions were used by someone or there would not be a road shown. A passage is created by use, where timber or vegetation is removed for ease of access. Continuous use allows the passage way (road) to remain and be depicted on a map. Similarly as to the East Fork Road to the middle of Section 8. A visible road in 1875, 1893, and on all maps thereafter, together with all the other evidence of vast usage, shows it was from early times in at least 1875 until statehood, used heavily by persons and that is what made the road visible to the surveyor and that use is what made the road visible on maps.

The district court also relied on "[t]he presence of sawmills, corrals, and homesteads along Bench Road and Middle Fork and along the portion of the East Fork Road to the middle of Section 8 [to] show [that] many persons were regularly using this road as far back as 1875." Ultimately, the district court concluded that "the totality of the evidence" had convinced it "by clear and convincing evidence [that] these portions of the road were used by the public continuously for at least 10 years, from at least 1880 to 1896."

█ ¶ 13 Haynes has failed to demonstrate error in the district court's public roadway determination. The district court made copious findings of fact,[3] necessarily based largely on historical evidence,[4] and

---

2. The district court discussed the fact that odd-numbered sections in the area were owned by "the railroad" during this time period but determined that railroad ownership of those sections did not affect the public land analysis. No party argues on appeal that this ruling is erroneous or that railroad ownership of the property during this time frame is relevant to the issues on appeal.

3. The district court's Memorandum Decision included comprehensive factual findings detailing the evidence elicited at trial, evidence that militated both for and against public highway status for the various portions of the Roadway. The district court's findings comprised seventy-four paragraphs covering thirty-five pages. We note that the legal conclusions involved in public highway determinations are very fact dependent

and the district court is entitled to a fair amount of discretion in determining the legal consequences of the facts it finds. *See Heber City Corp. v. Simpson*, 942 P.2d 307, 309–10 (Utah 1997). As a practical matter, the sheer detail of the district court's findings and the discretion allotted the court in applying the law to the facts makes us hesitant to disturb the district court's rulings absent a clear demonstration of error. *Cf. id.* at 310 ("The issues presented [by public highway determinations] do not lend themselves well to close review by this court, as we would be hard-pressed to establish a coherent and consistent statement of the law on a fact-intensive, case-by-case review of trial court rulings.").

4. As the district court noted, the issues before it required the determination of facts occurring "over 100 years ago, beginning perhaps as early

concluded that those facts demonstrated by clear and convincing evidence that these portions of the Roadway had been dedicated to public use long before Haynes owned the Haynes Property. Haynes has not demonstrated that the district court's fact findings were clearly erroneous,[5] *see generally Wasatch County v. Okelberry*, 2008 UT 10, ¶ 8, 179 P.3d 768, or that the facts and evidence failed to satisfy the appropriate clear and convincing standard for establishing public roads, *see generally id.* ¶ 9 ("In light of the constitutional protection accorded private property, we have held that a party seeking to establish dedication and abandonment under this statute bears the burden of doing so by clear and convincing evidence."). Accordingly, we affirm the district court's public roadway determinations.

■ ¶ 14 Similarly, we affirm the district court's private roadway determinations against the challenges raised on cross-appeal by the Boyers and the Jacobs. The district court ruled that the entirety of Boyer Road, as well as the southernmost portion of the East Fork Road and the easternmost half mile of the Middle Fork Road, remained private roads in the possession of the respective private landowners. The Boyers and the Jacobs challenge the district court's private roadway ruling as it applies to the East Fork Road and Middle Fork Road, arguing that those roads should have been declared public roads all the way to the Boyer Property.

¶ 15 As to the private portion of the East Fork Road, the district court stated,

[The Jacobs have] not shown by clear and convincing evidence that a particular route was used along the East Fork after leaving the middle of Section 8. That area was described as terrible passage, a rock pile, and other terms showing it was not heavily or as regularly used as the Bench and Middle Fork Roads. [The Jacobs have] shown that the route along the Bench Road and Middle Fork Roads was used by persons regularly and continuously. The East Fork road was described as ending in the middle of Section 8 and the early maps show that. . . . The road was constructed from the middle of Section 8 for the reservoir in about 1940, clearly not 10 years before Haynes blocked access. Thus, while there is some evidence people went to the [B]lue Lakes regularly, and some evidence that they went via East Fork Road, the evidence is not compelling that such use was continuous as required at least beyond the middle of Section 8. Had it been, the East Fork Road beyond the middle of Section 8 would have shown up on early maps and it does not.

The district court also relied on early maps to ascertain the endpoint of the public portion of the Middle Fork Road and, by implication, the beginning of the private portion. *See supra* ¶ 12.

¶ 16 We see no more error in the district court's reliance on map evidence to determine private roads than we did in its use of the maps to determine public ones. As noted by the district court, there were no live witnesses who could testify as to the public's use of the roads prior to the 1900s. In light of the circumstances, the district court did not clearly err in finding that the public roads ended where the maps suggested they ended and that the evidence of use beyond that shown on the maps was insufficient to establish the necessary public use of a particular route by clear and convincing evidence. *See generally Utah County v. Butler*, 2008 UT 12, ¶ 9, 179 P.3d 775 (reviewing a district court's factual findings for clear error and its application of the law to the facts only for an

as 1865, but certainly in the period 1880 to 1896. That obviously entails proof of facts mostly from documents rather than live witnesses. No witnesses appeared, nor could any be expected to, who were alive before 1896."

5. We acknowledge that Haynes has identified some evidence that, taken in isolation, could support a contrary ruling. However, in light of the evidence that *supports* the district court's ruling and the district court's extensive findings

detailing that evidence, Haynes has not demonstrated clear factual error. *See Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989) ("To mount a successful challenge to the correctness of a trial court's findings of fact, an appellant must first marshal all the evidence supporting the finding and then demonstrate that the evidence is legally insufficient to support the finding[] even in viewing it in the light most favorable to the court below.").

abuse of the significant discretion granted to the district court).

¶ 17 In sum, none of the parties have convinced us that the district court's factual findings on the public and private portions of the Roadway are clearly erroneous or that its legal conclusions based on those facts are incorrect. Accordingly, we affirm the district court's ruling that certain portions of the Roadway are public while others remain private.

## II. Quiet Title

■ ¶ 18 Haynes next argues that it was entitled to a decree from the district court quieting its title in the Haynes Property against all unrecorded access claims beyond those expressly found by the district court. According to Haynes's brief, once "Haynes proved title to its property, Haynes was entitled to a decree quieting title in Haynes subject only to easements of record and the specific roads the [district] court found to exist." As legal authority for its argument, Haynes provides us only with the proposition that "once [a] quiet title plaintiff makes a prima facie showing of ownership, defendant has the burden of going forward with proof of his challenge to plaintiff's title." *Baxter v. Utah Dep't of Transp.*, 783 P.2d 1045, 1055 n. 11 (Utah Ct.App.1989) (characterizing the holding of *Gatrell v. Salt Lake County*, 106 Utah 409, 149 P.2d 827 (1944)). We disagree with Haynes's interpretation of the law of quiet title as it applies to the facts of this case.

■ ¶ 19 A quiet title action "is a suit brought 'to quiet an existing title against an adverse or hostile claim of another' and 'the effect of a decree quieting title is not to vest title but rather is to perfect an existing title as against other claimants.'" *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 2006 UT 53, ¶ 26, 144 P.3d 1129 (emphasis omitted) (quoting *Department of Soc. Servs. v. Santiago*, 590 P.2d 335, 337–38 (Utah 1979)). Thus, Haynes could not use its quiet title action as

a blanket method of extinguishing all possible road claims that the various defendants or the public might potentially have against the Haynes Property. Rather, Haynes was entitled to an adjudication only of such specific adverse or hostile claims as Haynes identified in its pleadings. *See generally* 65 Am.Jur.2d *Quieting Title and Determination of Adverse Claims* § 69 (2001) ("The complaint in an action to quiet title ... must state all of the elements essential to the cause of action. Averments that are essential to a statement of the complainant's cause of action include allegations of facts showing ... the existence and invalidity of the defendant's claim or lien." (footnotes omitted)).

¶ 20 Here, Haynes sought relief in the form of a court declaration that Haynes held title to the Haynes Property free and clear of "any and all right, title, claim and interest" of the defendants and that "all roadways located upon the Haynes Property" are private roads. However, the only adverse roadway claim *specifically* identified in Haynes's pleadings was the Bench Road claim addressed by the district court. Haynes's general references to "any and all right, title and interest" and "all roadways" did not specifically identify any other adverse road claims across the Haynes Property, and the district court did not err in refusing to grant Haynes quiet title against such unidentified claims.[6]

## III. Road Width

■ ¶ 21 Haynes raises several arguments relating to the district court's handling of the determination of the width of the public roads on the Haynes Property. Utah case law has long established that the determination of the width of a roadway dedicated to the public is to be performed by the district court. *See, e.g., Memmott v. Anderson*, 642 P.2d 750, 754 (Utah 1982); *Jeremy v. Bertagnole*, 101 Utah 1, 116 P.2d 420, 423 (1941); *Lindsay Land & Live Stock Co. v. Churnos*, 75 Utah 384, 285 P. 646, 649 (1929); *Jennings Inv., LC v. Dixie Riding*

---

6. To the extent that the district court did adjudicate the status of other roads crossing the Haynes property, such as the East Fork Road, we assume that such claims came properly before the district court over the development of this

lengthy litigation. There is no argument from any party that the district court's consideration of the status of the East Fork Road was improper.

*Club, Inc.,* 2009 UT App 119, ¶¶ 32–34, 208 P.3d 1077, *cert. denied,* 215 P.3d 161 (Utah 2009). However, the district court is under no obligation to determine the width of a public road if that issue is not a central focus of the litigation before it. *See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.,* 909 P.2d 225, 232 (Utah 1995). Road width does not appear to have been the focus of this litigation, and thus the district court would likely not have erred had it simply declined to address the road width issue.[7]

¶ 22 However, the district court instead elected to delegate or defer the road width decision to the County. As a basis for this decision, the district court relied on Utah Code section 72–5–108, which states that "[t]he width of rights-of-way for public highways shall be set as the highway authorities of the state, counties, or municipalities may determine for the highways under their respective jurisdiction," *see* Utah Code Ann. § 72–5–108 (2009). The district court stated,

> [Utah Code section] 72–5–108 seems to provide a stated legislative polic[y] that the "width" of rights of way for public highways shall be set as the highway authority of the [s]tate or county may determine for highways under their respective jurisdiction.... It would thus seem under that statute that [the County] determines the width. The "scope" of the right of way is that which is reasonable and necessary to ensure safe travel according to the facts and circumstances. Thus, to this court these statutes indicate, despite the cases to the contrary, that the court need not declare a width as the court defers to the county authority to determine width. The cases that upheld the trial court's determination of width did not refer to [Utah Code section] 72–5–108 or its predecessors, [Utah Code section] 27–12–93, which have seemingly been in effect since 1963. The court, based on that statute, believes that

the determination of width is NOT for the court but for county authorities.

(Citation omitted.)

¶ 23 We do not agree with the district court that the language of Utah Code section 72–5–108 calls into question the validity of years of case law establishing that the district court is to determine road width in public road dedication cases. Rather, it appears that section 72–5–108 is intended to apply in other contexts, such as where a county sets or reserves rights of way on land that it already owns or is in the process of acquiring. This is not a situation where a statute has been substantively amended with the intent of abrogating existing case law; to the contrary, the same or similar language relied on by the district court has been in the Utah Code since 1963. *See* Utah Code Ann. § 27–12–93 (1963); Utah Code Ann. § 72–5–108. Several more-recent cases from the Utah Supreme Court and this court addressing this issue were decided while the same or similar language relied upon by the district court was in effect, *see, e.g., Butler, Crockett & Walsh Dev. Corp.,* 909 P.2d at 232; *Memmott,* 642 P.2d at 754; *Jennings Inv., LC,* 2009 UT App 119, ¶¶ 32–34, 208 P.3d 1077, and we are not prepared to say that these cases were decided in error under the district court's approach to section 72–5–108.

¶ 24 Accordingly, we determine that the district court erred when it deferred or delegated the road width determination to the County. Instead, if the issue was to be addressed at all, it needed to be determined by the district court "according to what is reasonable and necessary under all the facts and circumstances." *See Memmott,* 642 P.2d at 754; *see also Schaer v. State,* 657 P.2d 1337, 1342 (Utah 1983) (finding that the court erred in relying on evidence of a city ordinance that set the requirements regarding the widths of streets in a proposed subdivision plan but did "not address the reasonable and necessary width of a highway dedicated to the public"). We therefore reverse the district court's road width ruling and remand

---

7. The district court observed in its ruling that "[d]uring the trial there was precious little by way of evidence presented concerning the width of any portion of this road" and that "[t]he court was unaware the issue of width may arise specifically, and in fact it was hardly mentioned during trial except in closing argument and in one post-trial brief."

this matter for further consideration of that issue as may be appropriate.[8]

## IV. The Water Users' Easement

■ ¶ 25 Finally, the Boyers argue on cross-appeal that the district court erred when it granted a prescriptive easement across the Boyer Property to the Water Users. The Boyers argue that the Water Users did not plead such an easement when they were brought into the case as third-party defendants, nor did they present evidence of a prescriptive easement such that the issue could be said to have been tried by the express or implied consent of the parties, *see generally* Utah R. Civ. P. 15(b) ("When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

¶ 26 In response, the Water Users acknowledge that their pleadings did not expressly raise a claim for an easement over the Boyer Property but argue that the evidence presented at trial entitles them to an easement pursuant to rule 54(c) of the Utah Rules of Civil Procedure, *see id.* R. 54(c)(1) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."); *see also Jones, Waldo, Holbrook & McDonough v. Dawson,* 923 P.2d 1366, 1374 (Utah 1996) ("[T]he rules allow examination into and settlement of all issues bearing upon the controversy, with latitude for proof that extends beyond the pleadings, where appropriate." (internal quotation marks omitted)). The

Water Users point primarily to the testimony of Dennis Wright as support for the district court's easement ruling.[9]

¶ 27 We see no support in Wright's testimony for a prescriptive easement across the Boyer Property. Wright testified that he went to the reservoir with his grandfather, the former water master, in the 1950s for inspections and that, as the current water master, Wright visited the "lake" and reservoir frequently. However, we see nothing in Wright's testimony to evidence the Water Users' use of the Boyer Property at all, much less in such a way that would give rise to a prescriptive easement. *See generally Nyman v. Anchor Dev., LLC,* 2003 UT 27, ¶ 18, 73 P.3d 357 ("A prescriptive easement is created when the party claiming the prescriptive easement can prove that use of another's land was open, continuous, and adverse under a claim of right for a period of twenty years." (internal quotation marks omitted)). Thus, the Water Users have not demonstrated that the issue of a prescriptive easement across the Boyer Property was tried pursuant to the implied consent of the parties. *See generally Hill v. Estate of Allred,* 2009 UT 28, ¶ 48, 216 P.3d 929 ("Implied consent to try an issue 'may be found ... where evidence is introduced without objection, where it appear[s] that the parties understood the evidence [is] to be aimed at the unpleaded issue.'" (alterations in original)).

¶ 28 Because the Water Users have failed to identify evidence demonstrating that the prescriptive easement issue was tried pursuant to rule 15 despite their failure to plead it,[10] we agree with the Boyers that the dis-

---

8. Should the district court elect to determine the width of the public portions of the Roadway on remand, it must determine what is "reasonable and necessary to ensure safe travel," Utah Code Ann. § 72–5–104(3) (2009), consistent with the historical uses that resulted in dedication, *see Jeremy v. Bertagnole,* 101 Utah 1, 116 P.2d 420, 424 (1941) ("A particular use having been established, such width should be decreed by the court as will make such use convenient and safe. A bridle path abandoned to the public may not be expanded, by court decree, into a boulevard. On the other hand, the implied dedication of a roadway to automobile traffic is the dedication of a roadway of sufficient width for safe and convenient use thereof by such traffic.").

9. Additionally, the Water Users' appellate brief states, "The evidence also shows that the Water Users had an express easement over the Middle Fork Road and condemned a way over the East Fork Road." (Footnotes omitted.) However, the Water Users make no argument as to how these two routes of access across land not owned by the Boyers support a prescriptive easement across the Boyer Property. We expect that these are the sorts of issues that would have been explored in the district court and reflected in the record if the issue of the Water Users' prescriptive easement had actually been litigated at trial.

10. Of course, assuming no change in the evidence presented, the complete absence of evidence supporting the easement would also be fatal to the granting of the easement even if the

trict court granted the Water Users' easement in error. Accordingly, we reverse that portion of the district court's judgment.

## CONCLUSION

¶ 29 We affirm the district court's judgment establishing the public or private status of the various portions of the Roadway and denying a blanket order quieting title to the Haynes Property in Haynes as against all other potential road claims not litigated in this action. However, we determine that the district court erred when it delegated or deferred the public road width decision to the County and when it declared an easement across the Boyer Property in favor of the Water Users. Those portions of the district court's judgment are reversed and the matter is remanded for such further proceedings as may be necessary in light of this opinion.

¶ 30 WE CONCUR: GREGORY K. ORME and J. FREDERIC VOROS JR., Judges.

issue had been tried pursuant to the Water Users'   pleadings or the express consent of the parties.