**BUTLER, CROCKETT and WALSH DEVELOPMENT CORPORATION; The Pinecrest Water Company dba The Pinecrest Water Users Association; and John Walsh, Plaintiffs, Appellants, and Cross–Appellees,**

v.

**PINECREST PIPELINE OPERATING COMPANY; Salt Lake County; Upper Emigration Groves Water Users Association; Pinecrest Pipeline Company; Upper Emigration Pipeline; Emigration Groves Association; Emigration Water Users Association; Emigration Groves Water Users Association; Thomas Johnson, James Carter; and others, Defendants, Appellees, and Cross–Appellants.**

Nos. 930205, 930448 and 930464.

Supreme Court of Utah.

Nov. 15, 1995.

Rehearing Denied Jan. 8, 1996.

John Walsh, Salt Lake City, pro se.

Stanford Nielson, Salt Lake City, for Butler, Crockett & Walsh Dev. and Pinecrest Water Co.

Jo Carol Nesset–Sale, Salt Lake City, for Pinecrest Pipeline Operating Co.

David Yocom, Craig W. Anderson, Salt Lake City, for Salt Lake County.

James L. Warlaumont, Jeffrey W. Appel, Michele Mattsson, Salt Lake City, for remaining defendants.

ZIMMERMAN, Chief Justice:

This appeal involves two primary issues: (i) access to a road/trail called Burrs' Lane; and (ii) the ownership of and access to a waterworks that provides the sole source of drinking water to a development commonly known as "The Groves" located in the Pinecrest area of Emigration Canyon. In addition, the various parties challenge the district court's (i) imposition of sanctions on pro se plaintiff/attorney John Walsh; and (ii) refusal to impose sanctions on defendants' attorneys. We affirm the substance of the district court's judgment but reverse the imposition of sanctions against Walsh and remand for further proceedings.

Some preliminary facts: Burrs' Lane begins at the mouth of the Pinecrest portion of Emigration Canyon Road and runs north, upward to and through The Groves. Near the top of Pinecrest, Burrs' Lane crosses Roosevelt Trail, which runs perpendicular to Burrs' Lane. Walsh and the Butler, Crockett and Walsh Development Corporation ("BCWDC") own approximately eighty acres of property in an area above Roosevelt Trail referred to as "The Meadows" and have sought to limit the public's access to Burrs' Lane above Roosevelt Trail. The waterworks that serves the residents of The Groves has a point of diversion, as well as storage tanks, pipelines, valves, etc., located above Roosevelt Trail on the property of BCWDC.

The plaintiffs below, who are appellants and cross-appellees here, are Walsh, BCWDC, and the Pinecrest Water Company ("PWC"). Walsh is the controlling officer of both BCWDC and PWC. BCWDC is the corporate entity that owns most of the land at issue above Roosevelt Trail. PWC is a water company controlled by Walsh that purports to own the waterworks in question. PWC appeals from a judgment of the district court that defendants own the waterworks. BCWDC and Walsh appeal from that part of

the judgment granting defendants an easement across their land.

The defendants below, who are appellees and cross-appellants here, are Pinecrest Pipeline Operating Company ("PPOC"), a corporation owned and controlled by those owning property in the lower portion of the Pinecrest area who are users of the waterworks at issue in this case, numerous predecessor entities of PPOC, all individual members of PPOC and its predecessor entities, and all John Does claiming a right of access through the property of the Walsh parties. Defendants cross-appeal from a judgment of the district court giving Walsh and BCWDC the right to restrict access to Burrs' Lane above Roosevelt Trail.

■ We begin by noting the standard of review in this almost exclusively factual case. We reverse a trial court's findings of fact only if they are " 'against the clear weight of the evidence,' thus making them 'clearly erroneous.' " *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). In making such a determination, we consider the evidence in a light most favorable to the trial court's findings, and we recite the facts in accordance with that standard. *Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991).

Sometime around 1910, developers filed a plat for The Groves with Salt Lake County. The plat envisioned a large development consisting of small lots and included roads to access the lots. The layout of the roads and lots did not, however, take into account the rough terrain or steepness of the area. Burrs' Lane, the main road that runs through The Groves, does not follow the platted course because of the impassability of the platted path.[1]

In a 1913 prospectus, the National Real Estate Investment Company marketed cottage and cabin sites in The Groves, stating that a spring-fed water system was in place and available to serve these dwellings. At that time, a redwood stave pipeline constructed in 1912 provided water to the lots,

as well as to the nearby Pinecrest Hotel. The pipeline collected water from two sources on property above Roosevelt Trail and distributed the water to property below Roosevelt Trail.

Over the years, cottages and cabins were constructed and connected to the redwood stave pipeline. Sometime during 1951, the Pinecrest Hotel burned and was torn down. Thereafter, for the remainder of its existence, the redwood stave pipeline was maintained and operated solely by the defendant cabin and cottage owners whose properties it served. These cabin owners used the redwood stave pipeline and waterworks openly, notoriously, and continuously from approximately 1951 to 1979.

During the mid–1970s, residents of The Groves discussed among themselves the dilapidated condition of the redwood stave pipeline and the need to construct a replacement to ensure continued service. Defendants constructed a replacement system in 1980 with the agreement of the Thomas family. The Thomas family owned the property above Roosevelt Trail upon which the spring and waterworks collection system lay. This replacement waterworks is commonly referred to as "the blue line." The Thomas family agreed to the construction of the replacement water system because its collection source was closer to the bottom of their property and, therefore, reduced the encumbrances on their property.

On or about January 9, 1981, after the blue line was finished, Leroy Meyer, a resident of The Groves, sent a letter to other residents discussing the need to incorporate the Pinecrest Water Users Association ("PWUA"), an association of those connected to the blue line. On June 23, 1982, the defendant property owners incorporated under the name Pinecrest Pipeline Operating Company. PPOC was created specifically to operate the water system. The membership of PPOC was nearly identical to the membership of several unincorporated associations that had

---

1. Burrs' Lane is the "use" or "traveled" road through The Groves. The platted road has never been used by either the public at large or the residents of The Groves. Although the owner-

ship of Burrs' Lane was hotly contested at trial, all of the parties conceded that Salt Lake County had a superior claim to the platted road.

controlled and maintained both the redwood stave pipeline and the blue line—PWUA, Upper Emigration Groves Water Users Association ("UEGWUA"), and the Upper Emigration Groves Pipeline Company ("UEGPC").

On or about August 7, 1981, BCWDC entered into an agreement with the Thomas family under which it agreed to purchase eighty acres of undeveloped real property in The Meadows area of The Groves. The upper portion of this property contains the historic spring collection works for the redwood stave pipeline, and the lower portion is the location of the blue line and its spring source.

In the agreement between BCWDC and the Thomas family, BCWDC specifically acknowledged that it had "inspected said property, [is] familiar with its present condition and accept[s] said property in its present condition." The existence of the blue line was obvious, open, and notorious at that time. In addition, Walsh was personally aware of the waterworks prior to the purchase, and Briant Crockett, an officer of BCWDC, was heavily involved in the actual construction of the blue line in 1980, well before BCWDC's purchase of the subject property.

After BCWDC purchased the property in question, it took steps to limit access to Burrs' Lane above Roosevelt Trail. It posted no hunting and no trespassing signs in the area where Burrs' Lane crosses Roosevelt Trail. It also placed a large stone in the middle of Burrs' Lane and had the stone painted to read "Private Keep Out." At various other times between 1981 and 1987, BCWDC blocked Burrs' Lane with debris that it had cleaned off of the platted road, built a gate across Burrs' Lane, and built a large stone entrance to its property at the place where the platted road crosses Roosevelt Trail, thereby transferring access to its property to the platted road instead of Burrs' Lane.

On March 20, 1987, Walsh filed a complaint in the district court on behalf of BCWDC and PWC. He asserted four causes of action: (i) trespass and encroachment; (ii) negligent construction of the waterworks; (iii) misappropriation of water; and (iv) quiet title, claiming that defendants had no interest in or easement or right-of-way across plaintiffs' property. Defendants answered and counterclaimed for (i) an easement by prescription for the pipelines and waterworks; (ii) forfeiture of certain water rights; (iii) quiet title to the waterworks; and (iv) quiet title to an easement across plaintiffs' land.

On or about October 11, 1991, defendants moved to have Walsh disqualified as counsel for BCWDC and PWC since he would be a witness in the case. The district court disqualified Walsh in November of 1991, and appointed Stanford Nielsen as substitute counsel for BCWDC and PWC. On or about September 20, 1991, Walsh filed a memorandum with the district court in which he stated that he was "the record title holder of some of the property which is the subject of this action." On the basis of that representation, which Walsh orally confirmed to the district court on November 1, 1991, he was permitted to be added as a plaintiff and to represent pro se his own alleged personal interests. During a subsequent deposition, Walsh admitted that he did not own any property which was the subject of the litigation but was instead in the process of buying such property.[2] This contradicted Walsh's earlier representations in his pleadings and the representation he made directly to the district court.

At the conclusion of the trial, the district court made the following rulings that are relevant to the instant appeal: (i) neither the public nor the residents of The Groves have a prescriptive easement over Burrs' Lane above Roosevelt Trail, except to the extent necessary to repair and maintain the blue line; (ii) Burrs' Lane below Roosevelt Trail is a public road by operation of section 27–12–89 of the Utah Code;[3] (iii) the redwood stave

2. Walsh apparently acquired an interest in property above Roosevelt Trail on or about November 11, 1991, by warranty deed from Wayne Bytendorp. On December 17, 1991, ten days before closing arguments, Walsh transferred his alleged interest in the subject property to BCWDC.

3. Section 27–12–89 provides, "A highway shall be deemed to have been dedicated and aban-

pipeline was built and maintained by defendants and/or their predecessors in interest, and they were the owners of the line; (iv) defendants acquired a relocated prescriptive easement for the blue line, are the owners of the blue line, and are entitled to access plaintiffs' property to maintain and repair the line; (v) the protection zone[4] for the blue line is no larger than would have been afforded the redwood stave pipeline; (vi) the names PWUA, UEGWUA, and UEGPC are not proper dba's of Walsh, BCWDC, or PWC, but are instead owned by the resident water users of The Groves; (vii) the statute of limitations had run on plaintiffs' trespass claim; and (viii) Walsh must pay damages in the amount of $10,000 to defendants for attorney fees expended because of his misrepresentation concerning his ownership of property above Roosevelt Trail. Plaintiffs appeal, and defendants cross-appeal.

Walsh represented himself on appeal. Mr. Nielsen represented BCWDC and PWC. Walsh and BCWDC/PWC each filed separate briefs. Walsh briefed and argued twelve issues on appeal. BCWDC and PWC incorporated Walsh's arguments by reference and then briefed and argued twelve separate and distinct issues. In addition to the twenty-four issues raised by the Walsh parties, defendants raised three issues on cross-appeal. We begin our analysis with the issues raised by Walsh; we will then address the issues raised by BCWDC and PWC. To the extent that we have not already dealt with the issues raised by defendants on their cross-appeal, we will consider them last.

■ Walsh asserts that this court lacks jurisdiction over defendants' cross-appeal because that cross-appeal was untimely. This court has already resolved this issue. In a November 4, 1993, order, a unanimous law and motion panel held that defendants' cross-appeal was timely. Walsh's continuing argument regarding our jurisdiction over the cross-appeal is without merit.[5]

Five of the twelve issues Walsh raises on appeal involve the issue of sanctions. Walsh contends that the trial court erred in awarding sanctions against him and in not awarding sanctions against defendants' counsel. On cross-appeal, defendants assert that the district court's sanction against Walsh should be increased to some unspecified amount.

We first address Walsh's claim that the district court erred in not awarding sanctions against defendants' counsel. Walsh claims that "[t]he lower Court erred in not awarding sanctions against Mr. Jeffrey Appel, for his absolute violations of Rule 26(g) and Rule 56(g) of the Utah Rules of Civil Procedure, as well as for his flagrant violations of the Canons of Ethics and Rule 11 of the Utah Rules of Civil Procedure [sic]."

■ We need not address the correctness of the district court's refusal to sanction Mr. Appel. This court has repeatedly noted that it will not accept as true factual allegations in briefs not properly cited to the record. *See, e.g., Uckerman v. Lincoln Nat'l Life Ins. Co.,* 588 P.2d 142, 144 (Utah 1978). In fact, this court has held that an appellant's failure to cite to the record in a brief is grounds for assuming regularity in the proceedings and correctness in the judgment appealed from. *State v. Willett,* 909 P.2d 218, 221 (Utah 1995); *State v. Olmos,* 712 P.2d 287, 287 (Utah 1986) (per curiam). The justification for this rather severe rule is that a " 'reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop,* 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl,* 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 511, 416 N.E.2d 783, 784 (1981)).

Although Walsh accuses defendants' counsel of numerous misdeeds, he does not provide a single citation to the record in support

doned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 27–12–89.

4. A protection zone is a buffer area which protects the purity of a water source.

5. Walsh also claims that this court lacks jurisdiction over the appeal of Salt Lake County. Because Salt Lake County voluntarily dismissed its appeal in September of 1994, that issue is moot.

of his factual allegations. Furthermore, in the twelve pages that Walsh devotes to the issue, he does not provide a single citation to any legal authority. Finally, although Walsh notes that the district court refused to impose sanctions on defendants' counsel, he never sets out the basis for the district court's decision. Given the state of his brief, we refuse to consider Walsh's claims that the district court erred in not imposing sanctions on defendants' counsel. *Willett*, 909 P.2d at 221; *see Plankinton v. Nye County*, 95 Nev. 12, 588 P.2d 1025, 1025 (1979) (per curiam) (holding that alleged error could not be demonstrated on appeal absent citation to relevant authority); *Cavett v. Peterson*, 688 P.2d 52, 59 (Okla.1984) (holding that matters alleged to be error, presented simply as argument, unsupported by relevant authority, would not be considered on appeal).

Walsh also challenges the district court's imposition of sanctions on him in the amount of $10,000. On cross-appeal, defendants contend that the sanction is insufficient and should be increased to some unstated amount. As indicated above, Walsh represented to the court that he was "the record title holder of some of the property which is the subject of this action." On the basis of that representation, which Walsh orally confirmed to the trial court on November 1, 1991, the court permitted him to be added as a plaintiff and to represent his own alleged personal interests pro se. In fact, Walsh did not own property but was simply in the process of buying it.

After learning of Walsh's misrepresentations, the district court made the following findings:

On November 11, 1991, John Walsh acquired some of the subject property above Roosevelt Trail in his own name. Prior to that time, he did not own any of the subject property above Roosevelt Trail in his own name. John Walsh misrepresented to the Court at the November 5 [sic], 1991, disqualification hearing and in earlier pleadings that he owned property in the subject area above Roosevelt Trail when he owned no such property. . . .

. . . .

That Plaintiff, John Walsh, did not personally own an interest in the subject property above Roosevelt Trail on November 5 [sic], 1991, and did not acquire legal title to any such property until November 11, 1991. . . .

That John Walsh acted in bad faith in misrepresenting to the Court that he owned property in the subject area above Roosevelt Trail, when he did not own such property. For this, the Court awards Defendants punitive and bad faith damages against John Walsh for $10,000.00.

However, after Walsh filed a motion to amend the judgment, the district court struck the above findings and inserted the following lone finding in their place:

[Walsh] failed to disclose or negligently misrepresented to the Court and Counsel at the November 1, 1991 hearing and at the trial the full facts as to his ownership of property above Roosevelt Trail. That this action by [Walsh] caused the Court and Counsel for Defendants to have to pursue this matter resulting in damages to the Defendants for attorneys fees in the sum of $10,000.00.

The district court's lone finding is insufficient to support the imposition of sanctions because we cannot tell under what authority the court purported to act and, consequently, under what standard Walsh's conduct was being judged. As we said in *Acton v. J.B. Deliran*, 737 P.2d 996, 999 (Utah 1987) (citations omitted):

Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." The findings of fact must show that the court's judgment or decree "follows logically from, and is supported by, the evidence." The findings "should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached."

Even construed liberally, the district court's ruling as to the issue fails to satisfy this standard. Although it is undisputed that

Walsh misrepresented to the court his ownership of property above Roosevelt Trail, that undisputed fact, standing alone, is not sufficient to warrant affirmance of the sanctions. The finding is insufficient in two important respects: (i) it does not make clear, and we cannot tell from our reading of the record, upon what legal ground the sanctions are imposed (i.e., rule 11 or the district court's contempt powers); and (ii) it does not explain how the misrepresentation affected either the court or defendants. Accordingly, it is impossible for this court to determine whether the imposition of sanctions is proper as a matter of law and, if the sanctions were imposed for a violation of rule 11, whether the district court abused its discretion in formulating the type and amount of the sanction. *See Barnard v. Sutliff*, 846 P.2d 1229, 1233–35 (Utah 1992). We therefore reverse the award of sanctions and remand the matter to the district court for the entry of more detailed findings of fact and conclusions of law. On remand, defendants will have the opportunity to convince the district court that the original award of sanctions was insufficient.

Walsh next contends that the district court erred as a matter of law when it failed to determine the width of Burrs' Lane below Roosevelt Trail. As indicated above, the district court held that Burrs' Lane below Roosevelt Trail is a public road by operation of section 27–12–89 of the Utah Code. It did not, however, make any findings regarding the width of the road.

Walsh contends, without explaining why, that the district court was legally required to determine the width of Burrs' Lane and that the undisputed evidence before the district court demonstrated that the road was thirty-three feet wide. Defendants, on the other hand, contend that the width of Burrs' Lane was never the focus of the litigation and that the district court acted properly in not determining its width.

■ We begin by noting that "where the evidence establishes dedication of a roadway [pursuant to section 27–12–89] . . . , the width of such roadway is not to be . . . measured by the boundaries of the beaten track." *Jeremy v. Bertagnole*, 101 Utah 1, 8, 116 P.2d 420,

423 (1941). Instead, it is " 'proper and necessary for the court in defining the road to determine its width, and to fix the same according to what was reasonable and necessary, under all the facts and circumstances, for the uses which were made of the road.' " *Id.* (quoting *Lindsay Land & Live Stock Co. v. Churnos*, 75 Utah 384, 392, 285 P. 646, 649 (1929)); *see also Memmott v. Anderson*, 642 P.2d 750, 754 (Utah 1982). Determining what width is necessary and proper is a question of fact. *Memmott*, 642 P.2d at 754.

■ In the instant case, although there is some incidental evidence in the record regarding the width of Burrs' Lane below Roosevelt Trail, that issue was never the focus of the litigation. Because a determination of the width of a public road involves a careful balancing of "what is reasonable and necessary" given the particular facts of a given case, *see Bertagnole*, 116 P.2d at 423; *Memmott*, 642 P.2d at 754, it was not error for the district court to refuse to determine the width of the road when that issue was not the focus of the litigation.

Walsh next argues that the district court erred in (i) granting defendants an easement for the blue line over property below Roosevelt Trail; (ii) entering findings about water rights when the issue of water rights had been assigned to a different district judge; and (iii) concluding that defendants had standing to assert a counterclaim. We find it impossible to review these issues because where they are factual, Walsh has failed to cite to the record on appeal and, where they are legal, he has failed to cite the court to any relevant authority. *See Bishop*, 753 P.2d at 450. Accordingly, we assume regularity in the proceedings before and correctness in the judgment of the trial court. *Willett*, 909 P.2d at 221; *Olmos*, 712 P.2d at 287.

Having disposed of Walsh's claims, we next consider those issues raised only by BCWDC. As its first two issues on appeal, BCWDC asserts that the district court erred when it (i) refused to quiet title in the property above Roosevelt Trail in favor of BCWDC; and (ii) refused to quiet title to the redwood stave pipeline in favor of BCWDC.

---

More specifically, BCWDC contends that the district court erred when it concluded that BCWDC's expert witness on chain of title, David Reed, was not qualified, and when it found BCWDC's other evidence insufficient to carry its burden of proof on either quiet title matter.

Regarding its expert, BCWDC argues that the trial judge improperly found the expert unqualified to give an opinion as to title and asks this court to "review the qualifications of [Reed] and draw its own conclusions as [plaintiffs] submit that it is without question that [Reed] was fully qualified and competent to testify as to the title vesting in the [p]laintiffs." The problem with this argument is that it misapprehends the standard under which we review a district court's decision regarding the qualifications of a proffered witness.

 Rule 702 of the Utah Rules of Evidence provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Utah R.Evid. 702. We have consistently held that trial judges are to be given a wide measure of discretion in determining whether a particular witness qualifies as an expert. *State v. Espinoza,* 723 P.2d 420, 421 (Utah 1986); *Shurtleff v. Jay Tuft & Co.,* 622 P.2d 1168, 1173 (Utah 1980). Trial courts are accorded this discretion because they are "in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole." *State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

 The district court in the instant case sat through a lengthy direct examination, cross-examination, and redirect examination of Reed. On cross-examination, defendants thoroughly discredited both Reed's methods and his conclusions when they introduced deeds in the chain of title that he had missed. In light of this testimony, the district court made the following rulings from the bench:

The Court was also concerned as far as the testimony of the abstractor; I think he came into this Court as an honest individual and gave the best testimony he could on it. I do not think that he was completely qualified as an expert in the field to give the testimony as to the chain of title and a legal opinion as to where the title went.

So I had to take his testimony as to the way the Court viewed it, and again I say I didn't think that he was being dishonest, I think he was testifying the best he could from the experience he had had and from his expertise, [but] I don't think his expertise met the qualifications which he was called to testify on.

Later, in its final written findings, the district court concluded as a matter of law that

[p]laintiffs have failed to meet their burden of proof in their quiet title action, by virtue of the lack of qualification of their witnesses and their failure to provide a complete chain of title to this Court.

Accepting BCWDC's characterization of the district court's ruling as finding Reed unqualified to offer an expert opinion on the state of BCWDC's title, a characterization with which defendants agree, we hold that the district court did not abuse its discretion in rejecting his opinion testimony.

As to the other evidence which it contends supports its claim that the trial court should have quieted title in it, BCWDC seems to assert that because it supposedly took the subject property via warranty deed, it is entitled to have title quieted. In support of its contention, BCWDC notes that it not only acquired its "interest pursuant to the statutory warranties but also purchased title insurance." This argument is utterly without merit.

 The mere possession of a warranty deed does not prove title to anything, especially if the grantors do not own what they purport to convey. A warranty deed is a contract *between the grantor and the grantee* whereby the grantor promises that "he is lawfully seised of the premises; that he has good right to convey the same; that he guarantees the grantee ... quiet possession thereof; that the premises are free from all encumbrances; and that the grantor ... will forever warrant and defend the title

thereof in the grantee ... against all lawful claims whatsoever." Utah Code Ann. § 57–1–12. Third parties, such as the defendants in this case, are not bound by the warranties set out in a warranty deed. Instead, if it becomes obvious that the property is subject to an encumbrance or a right-of-way, the remedy is against the grantor, not against the party that owns the right-of-way.[6] Therefore, BCWDC's warranty deed does not provide a basis for its quiet title claim.

Both BCWDC and PWC also challenge the accuracy and sufficiency of the evidence underlying almost all of the district court's findings of fact. In particular, they contend that defendants failed to prove (i) adverse possession of the redwood stave pipeline; (ii) permission to relocate the waterworks to the current site of the blue line; (iii) nonabandonment of the redwood stave pipeline; (iv) title to the blue line; (v) an easement over the subject property for both the running of the blue line and access to the blue line for its maintenance and repair; and (vi) ownership of the name Pinecrest Water Users Association.

■ These ultimate findings are grounded in detailed subsidiary factual findings that occupy almost the entirety of the district court's findings and are based upon an extensive evidentiary record. Yet not only have BCWDC and PWC failed to marshal the evidence in support of the trial court's findings as they are required to do before attacking them, *Bartell*, 776 P.2d at 886, but they have failed to include any citations to the record on appeal in support of their supposed version of the facts. This blatant failure to fulfill the duties imposed on an appellant leads us to assume regularity in the proceedings before and correctness in the judgment of the trial court. *Willett*, 909 P.2d at 221; *Olmos*, 712 P.2d at 287.

BCWDC next claims that the district court erred when it ruled that the statute of limita-

tions had run on plaintiffs' trespass claim and that the easement across BCWDC's property granted to defendants by the district court is void for lack of specificity. Again, we decline to reach the merits of either of these issues. As noted above, this court " 'is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " *Bishop*, 753 P.2d at 450 (quoting *Williamson*, 48 Ill. Dec. at 511, 416 N.E.2d at 784); *see also Plankinton*, 588 P.2d at 1025; *Cavett*, 688 P.2d at 59; Utah R.App.P. 24(a)(9) ("The argument [section of an appellant's brief] shall contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on."). BCWDC devotes little more than a single page of its brief to the issue of the statute of limitations for trespass and, other than a bold citation to the statute of limitations for trespass actions, which is not helpful, does not include a single citation to authority. As to the specificity of the easement, although the briefing is more extensive than on the trespass issue, there is only a single citation to authority, a citation that is irrelevant to the issue of specificity. Furthermore, it is impossible to tell from the brief whether this particular challenge is to the legal or factual basis for the court's ruling.[7] The briefing of these two issues is so lacking as not to allow meaningful appellate review. We therefore decline to reach the merits.

As its final contention on appeal, BCWDC claims that the district court erred, as a matter of fact, in granting defendants a protection zone for the blue line. On cross-appeal, defendants argue that the district court was correct in granting a protection zone but erred in limiting the protection zone to that area "necessary to meet State regulations that would have been in effect for surface sources prior to the time of relocation of

---

6. That is in fact what happened in this case. After the Thomas family sued BCWDC for failure to pay the full purchase price of the subject property, BCWDC asserted a counterclaim that the land was burdened by the existence of defendants' waterworks and other easements and conditions on the land.

7. This section of BCWDC's brief, as is the case with the entire brief, does not contain a single citation to the record.

the redwood [stave] line." We affirm the district court.

We summarily reject BCWDC's contention that the district court erred as a matter of fact in granting a protection zone for the blue line. As is the case throughout its brief, BCWDC assails both the sufficiency and accuracy of the district court's finding without marshaling the evidence or providing any citations to the record. We therefore assume correctness in the judgment appealed from. *Willett*, 909 P.2d at 221; *Olmos*, 712 P.2d at 287.

■ We find defendants' challenge to the scope of the protection zone also to be without merit. They assert that they are entitled to a protection zone for a spring source, rather than the protection zone for the surface source that the trial court actually granted them. Their argument is predicated on the supposed "fact" that the trial court, in ruling from the bench, originally granted them a protection zone for a spring source, but "improperly altered" its final written finding to grant defendants only that protection zone which attached to the original redwood stave pipeline. We conclude, in contrast to defendants' assertions, that the trial court's final written findings of fact not only accurately reflect its ruling from the bench, but also grant defendants exactly what they requested at trial.

According to defendants, the trial court originally ruled from the bench that they "had a protection zone for the *spring source for the redwood stave pipeline* and that this protection zone was relocated with the construction of the blue line to the spring source for that pipeline." (Emphasis added.) Defendants contend that the district court acted in derogation of its ruling from the bench when it granted defendants a protection zone "necessary to meet State regulations that would have been *in effect for surface sources* prior to the time of relocation of the redwood [stave] line." (Emphasis added.)

We are somewhat mystified by defendants' contentions. In contrast to their assertions, the district court never indicated from the bench that the diversion for the redwood stave pipeline was a spring diversion and never indicated that defendants were entitled

to a larger protection zone than the one afforded the redwood stave pipeline. In fact, the district court repeatedly stated from the bench that the protection zone to which defendants were entitled was the zone that was in existence for the redwood stave pipeline's *surface diversion* at the time of the relocation. Thus, we find without merit defendants' suggestion that the district court's written ruling contradicts its ruling from the bench.

■ More important, we note that the district court's written ruling on the protection zone grants defendants exactly what they prayed for before the district court. Defendants' counsel stated in open court as follows:

> [As to the] Redwood [stave] line, I think the evidence is it was a surface diversion, *so I presume what you're indicating is that as of 1979–80[,] which is the date it was relocated, whatever the state agency required for surface diversion is what we may have to the springs diversion at the point of time it was relocated.*
>
> . . . .
>
> We are willing to live with whatever was there at the redwood [stave] line; *and that's what we asked for,* to get whatever was there. *In that case it's a surface source* . . . .

(Emphasis added.) Thus, in contrast to the assertions in their brief, defendants received exactly what they asked for when the district court ruled in its final findings that they were entitled to "the protection zone necessary to meet State regulations that would have been in effect for *surface sources* prior to the time of relocation of the redwood [stave] line." (Emphasis added.) Defendants cannot now base a claim of error on that ruling. *State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993) (holding that "a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error"); *Ludlow v. Colorado Animal By–Products Co.,* 104 Utah 221, 137 P.2d 347, 354 (Utah 1943) ("A party who takes a position which either leads a court into error or by conduct approves the error committed by the court, cannot later take

advantage of such error . . . ."); *see also Nixon v. Salt Lake City Corp.*, 898 P.2d 265, 270 (Utah 1995).

In addition to the issues on cross-appeal discussed above, defendants also assert that the district court erred in refusing to grant them a prescriptive easement over the property above Roosevelt Trail. After making numerous subsidiary findings of fact, the district court concluded "as a matter of law that the claims of all John Does claiming a right of access to the subject property by prescription or otherwise . . . are as a matter of law without merit." Defendants do not challenge the factual predicates of the district court's ultimate legal conclusion or the sufficiency of those findings [8] but instead assert that the "evidence supports [defendants'] entitlement to a prescriptive easement." Defendants do not marshal the evidence in support of the trial court's findings, as they must, but simply proceed to set out all of the evidence adduced at trial that supports their claim to such an easement. Defendants have "essentially reargued the factual case submitted below, construing all evidence in a light most favorable to [their] case and largely ignoring the evidence supportive of the trial court's findings." *Bartell*, 776 P.2d at 886. Because they have not fulfilled their duty as cross-appellants, we assume regularity in the proceedings and correctness in the judgment of the trial court. *Willett*, 909 P.2d at 221; *Olmos*, 712 P.2d at 287.

We reverse the imposition of sanctions against Walsh and remand to the district court for more specific findings in accordance with this opinion. On remand, defendants will have the opportunity to convince the trial court that the original award of sanctions was insufficient. As to all other matters, we affirm.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ. concur.

---

8. In fact, defendants do not even reference the district court's factual findings in relation to this issue.