1999 UT 97

**Michael L. HALL and Dana T. Hall, Plaintiffs, Cross-Claim Plaintiffs, and Appellants,**

v.

**NACM INTERMOUNTAIN, INC., a Utah corporation, and Aquarius Kitchen & Bath, Inc., a Nevada corporation, Defendants and Appellees.**

**Aquarius Kitchen & Bath, Inc., a Nevada corporation, Third–Party Plaintiff and Appellee,**

v.

**Washington County, Utah, Third–Party Defendant, Cross-Claim Defendant, and Appellee.**

No. 980177.

Supreme Court of Utah.

Oct. 12, 1999.

Blake S. Atkin, Johnathan L. Hawkins, Salt Lake City, for Halls.

Scott W. Lee, Salt Lake City, for NACM.

Lewis P. Reece, St. George, for Aquarius.

David O. Nuffer, Brent M. Brindley, St. George, for Washington County.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1   Plaintiffs Michael L. Hall and Dana T. Hall brought this action against defendants NACM Intermountain, Inc., and Aquarius Kitchen & Bath, Inc., to quiet title to a lot in Washington County, Utah, which they purchased from the County at a tax sale. Plaintiffs appeal from an adverse judgment, contending that the trial court erred in (1) granting summary judgment to the defendants, (2) imposing sanctions against their attorney, and (3) dismissing their cross-claim against third-party defendant Washington County.

## BACKGROUND

¶ 2   In 1990, the County assessed taxes on real property described as Lot 24, Unit 3, Dixie Deer Estates (the "Property"), which went unpaid by then-owners Michael and Pamela Hill. The County purchased the Property at a preliminary tax sale in January 1991.

¶ 3   In addition to owing back taxes on the Property, Michael Hill was indebted to Aquarius. Aquarius contacted NACM Intermountain, Inc. ("NACM") for assistance in collecting this debt. NACM retained Lewis P. Reece as local legal counsel to pursue the collection, who then designated NACM as plaintiff in the debt collection suit. When Hill failed to file an answer to the complaint, NACM obtained a default judgment against him in the district court of Washington County. NACM assigned this judgment to Aquarius in 1994, but Aquarius did not docket the assignment in the court or place the assignment on any public record.

¶ 4   Four years after the County acquired the Property, no one had redeemed it. Therefore, pursuant to Utah Code Ann. § 59–2–1351(2),[1] the County published notice

---

1.  Section 59–2–1351(2) of the Utah Code reads, in pertinent part:

> (2) Notice of the tax sale shall be provided as follows:
>
> (a) sent by certified and first class mail to the last-known recorded owner, the occupant of any improved property, and *all other interests of record*, as of the preceding March 15, at their last-known address; and
>
> (b) published four times in a newspaper published and having general circulation in the county, once in each of four successive weeks immediately preceding the date of sale....

Utah Code Ann. § 59–2–1351(2) (1995) (emphasis added). Prior to 1995, the statute read, in pertinent part:

> (2) Notice of final tax sale shall be published four times in a newspaper published and having general circulation in the county, once in each of four successive weeks immediately preceding the date of sale.... Notice of sale shall also be sent by certified mail to the last known recorded owner and *all other recorded lienholders,* according to the deed, as of the preceding March 31, at their last-known address.

Utah Code Ann. § 59–2–1351(2) (Supp.1988) (emphasis added).

The parties raise the question of which version of the statute applies in this case; however,

of a scheduled tax sale in "The Spectrum," a Washington County newspaper, on May 4, 21, 28, and June 4, 1995. Additionally, the County searched the records pertaining to the Property in the Washington County Recorder's office and notified all persons who had recorded interests therein by certified mail. Because neither NACM's judgment against Hill nor the subsequent assignment of the judgment to Aquarius appeared on those records, the County gave neither NACM nor Aquarius notice by mail of the pending sale of the Property. On June 6, 1995, the County conducted the final tax sale at which time the Halls purchased the Property for $8,800.

¶ 5 Between June 1995 and August 1995, the Halls attempted to obtain title insurance and sell the Property but were unsuccessful because of NACM's judgment. Subsequently, the Halls brought this quiet title action against both NACM and Aquarius. NACM eventually denied any claim or interest in the Property and executed a quit-claim deed to the Halls in October 1995. Aquarius, meanwhile, moved for and obtained leave to file a third-party complaint against the County.

¶ 6 On April 2, 1996, the trial court ordered the parties to appear at an April 25, 1996, scheduling conference in St. George. The Halls' counsel, Blake S. Atkin, and NACM's current counsel, Scott W. Lee, both have their offices in Salt Lake City. In its order, the trial court indicated that telephone appearances by the parties would not be allowed and that the court would not permit continuance of the conference. A few days prior to the conference, the trial court informed Atkin and Aquarius's counsel, Reece, that the conference had been continued. The court specifically directed Atkin to notify Lee of the continuance, but Atkin failed to do so. On April 24, 1996, Lee contacted the court clerk who informed him that the conference was still scheduled for the following day and to attend in person. As a result, Lee traveled from Salt Lake City to St. George—a distance of approximately 300 miles—only to learn that the conference had been continued.

¶ 7 The trial court ordered Atkin personally—not his client—to pay Lee's attorney fees and travel expenses, citing as a reason Atkin's failure to notify Lee of the continuance. Atkin filed an objection to this order (the "Order"), arguing that the Order was improper because the trial court did not allow a hearing on the sanctions because it did not identify the basis for the award of sanctions, and because the supporting affidavit was insufficient. The trial court denied this objection and ordered Atkin to pay $1,264 for Lee's attorney fees and travel expenses.[2]

¶ 8 The Halls moved for summary judgment on their complaint. Aquarius filed a cross-motion for summary judgment seeking (1) the dismissal of the Halls' action and (2) an order invalidating the final tax sale, alleging that the County failed to comply with the statutory notice requirements for the final tax sale. The trial court denied the Halls' motion, but granted Aquarius's cross-motion invalidating the tax sale, and held that Aquarius had a valid judgment lien on the Property. The Halls then asserted a cross-claim against the County for damages incurred as a result of the invalid deed, e.g., loss of the $8,800 purchase price, loss of an arranged potential sale of the Property, and costs and attorney fees. The County moved to dismiss; the trial court granted the motion. The Halls now appeal from (1) Aquarius's summary judgment, (2) the order imposing sanctions against Atkin, and (3) the order granting the County's motion to dismiss their cross-claim.

## ANALYSIS

### I. SUMMARY JUDGMENT

¶ 9 We review a trial court's entry of summary judgment for correctness, according its conclusions of law no deference. See *Utah Farm Bureau Ins. Co. v. Crook,* 980 P.2d 685 (Utah 1999). Summary judgment is appropriate only where no genuine

based upon our analysis below, it is unnecessary to address this issue.

2. This court denied a petition for an interlocutory appeal of the Order. Furthermore, both the trial court and this court denied requests for a stay of the Order.

issues of material fact exist and where the moving party is entitled to judgment as a matter of law. *See id.;* Utah R. Civ. P. 56(c).

¶ 10 The trial court in its memorandum decision on Aquarius's cross-motion for summary judgment determined "that a judgment lien . . . is an interest 'of record' as that term is used in § 59–2–1351" and that the County therefore had a statutory obligation to provide NACM with notice by mail of the final tax sale because NACM was Hill's judgment creditor. The trial court relied upon Utah Code Ann. § 78–22–1(2), which provides that "the entry of judgment by a district court is a lien upon the real property of the judgment debtor, not exempt from execution, owned or acquired during the existence of the judgment, located in the county in which the judgment is entered." Consequently, the court concluded that the tax sale to the Halls was invalid, granted Aquarius's cross-motion for summary judgment, and dismissed the Halls' complaint.

¶ 11 While the parties raise the question of whether judgment creditors are statutorily entitled to notice by mail of a scheduled final tax sale, we do not need to reach that issue at this time. Even assuming for the purposes of this case that notice by mail to judgment creditors is required pursuant to section 59–2–1351(2), the failure of the County to do so was harmless because NACM was not a judgment creditor when the County mailed notices of the sale. It had assigned the judgment to Aquarius the previous year. Aquarius, however, had not docketed or recorded[3] its assignment on any public record and was therefore not entitled to notice by mail. Thus, the trial court erred in granting Aquarius's cross-motion for summary judgment.

¶ 12 Aquarius argues that because the name and address of counsel for NACM appeared on the judgment and because he was also counsel for Aquarius at certain times, had notice by mail been given to him for NACM, he would have forwarded the notice to Aquarius. This argument is speculative at best and overlooks the reality that NACM was not a judgment creditor at the time of the tax sale and was not entitled to notice.

## II. DUE PROCESS

¶ 13 We next address Aquarius's argument that the failure of the County to mail notice of the tax sale violated the due process clauses of both the Utah State Constitution and the United States Constitution. As this and other courts have noted, parties who fail to take the steps necessary for receiving notice waive their constitutional protection and are not entitled to notice. *See, e.g., Lehr v. Robertson,* 463 U.S. 248, 265, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *In re. Adoption of Reeves,* 309 Ark. 385, 831 S.W.2d 607, 609–10 (1992); *Hatorah v. New York City,* 175 A.D.2d 795, 573 N.Y.S.2d 94, 95 (1991); *In re Adoption of Baby Boy Doe,* 717 P.2d 686, 691 (Utah 1986) (Stewart, J., dissenting) (citing *Wells v. Children's Aid Soc'y,* 681 P.2d 199 (Utah 1984)).

¶ 14 It is undisputed that Aquarius failed to docket or record NACM's judgment assignment. With this failure, the County had no knowledge of the assignment and could not send Aquarius notice of the final tax sale by mail. Therefore, neither statutory law nor constitutional principles required the County to send notice by mail to Aquarius. *See, e.g.,* Utah Code Ann. § 57–1–26(1) (stating that request for notice of sale under trust deed requires mailing address); *id.* § 57–1–26(4) (stating that if no mailing address is listed in trust deed, notice by publication is sufficient); *id.* § 57–3–10(2) (requiring mailing address of grantees). There has been no denial of due process.

## III. ATTORNEY SANCTIONS

¶ 15 We turn now to the Halls' assertion that the trial court erred in imposing sanctions against Atkin for his failure to inform NACM's counsel, Lee, of the continuance of a scheduling conference. Atkin argues that (1) he was entitled to a hearing prior to the trial court entering the Order, (2) neither Lee's affidavit nor the Order itself identifies the legal basis upon which the award is based, (3) there was, in fact, no such legal basis, and (4)

---

3. Judgments may be recorded pursuant to Utah Code Ann. § 57–4a–3(3).

the attorney fees were excessive. We will address each of these contentions in turn.

¶ 16 First, Atkin maintains that because he was not afforded a formal hearing concerning the sanctions, the imposition of the sanctions was improper. He complains that the Order was entered before any motion, memorandum, or hearing was allowed, asserting that the "rules provide for the orderly dispensation of justice through the filing of motions supported by memoranda and supporting evidence."

¶ 17 The language ordering sanctions was initially in the minute entry for Lee's April 25, 1996, appearance before the trial court. On May 15, 1996, in response to this language, Atkin filed an "Objection to Proposed Order" and a supporting affidavit. The Order was not entered formally until May 16, 1996, *after* the court received Atkin's objection.

¶ 18 By the objection's caption—"Objection to Proposed Order"—Atkin showed that he considered the sanctions to be *proposed* only, not a finalized, formal court order. He cannot now argue to this court that he considered the Order to have been entered and final before he filed his objection. Furthermore, the fact that the trial court waited to receive and review the objection before signing the Order fulfilled Atkin's desire to see an "orderly dispensation of justice." The trial court thereby afforded him the opportunity to object to its proposed order, supported by his affidavit. We therefore reject his first argument.

¶ 19 Second, Atkin contends that the Order is improper because (a) Lee's affidavit, filed in support of the Order, fails to "specifically" set forth the legal basis behind the award, citing Utah Code Jud. Admin. R4–505; and (b) the Order itself failed to set forth any legal basis, citing *Butler, Crockett, & Walsh Development Corp. v. Pinecrest Pipeline Operating Co.*, 909 P.2d 225 (Utah 1995) (*"Butler Crockett"*).

¶ 20 Rule 4–505 of the Utah Code of Judicial Administration requires that affidavits supporting the award of attorney fees be filed with the trial court and must set forth specifically the legal basis for the award.

Atkin's assertion that Lee's affidavit "fail[ed] to set forth any such legal basis" is true. However, the omission was harmless error.

¶ 21 The purpose of the requirement that an affidavit in support of an award of attorney fees state the legal basis for the award is to inform the court and opposing counsel of the ground relied upon because fees are not routinely awarded in every case and can be awarded only on certain narrow grounds. In this case, the award of fees had its genesis in the minute entry made by the court on April 26 when Lee appeared in St. George for a scheduling conference that had been continued, after Atkin had failed to notify Lee of that fact. The court and both counsel always knew the basis for the proposed award of fees because it arose at that particular time. At no time was the court or counsel ever without knowledge as to the purpose behind the proposed fees. Atkin has not been prejudiced by the omission. We do not reverse the trial court for committing harmless error.

¶ 22 Moving to Atkin's assertion that the Order itself lacked language setting forth a legal basis for the sanctions, we need only look to *Butler Crockett* and the Order itself. In *Butler Crockett*, we reviewed a trial court's written finding concerning a pro se plaintiff/attorney's failure, both at a hearing and at trial, to disclose his ownership of real property involved in the dispute. The trial court's findings were fact specific and detailed. Following plaintiff's motion to amend the judgment, the trial court struck the detailed findings and inserted a single finding that read as follows:

> "[Plaintiff] failed to disclose or negligently misrepresented to the Court and Counsel at the November 1, 1991 hearing and at the trial the full facts as to his ownership of property above Roosevelt Trail. That this action by [plaintiff] caused the Court and Counsel for Defendants to have to pursue this matter resulting in damages to the Defendants for attorneys fees in the sum of $10,000."

*Butler Crockett*, 909 P.2d at 231. We held that the "district court's lone finding is insufficient to support the imposition of sanctions

because we cannot tell under what authority the court purported to act and, consequently, under what standard [plaintiff's] conduct was being judged." *Id.* We stated that the *Butler Crockett* finding was insufficient in two ways: "(i) it does not make clear, and we cannot tell from our reading of the record, upon what legal ground the sanctions are imposed (i.e., rule 11 or the district court's contempt powers); and (ii) it does not explain how the misrepresentation affected either the court or defendants." *Id.* at 232. We were concerned that the trial court had, by its brevity, made it impossible for us to determine the appropriateness of sanction imposition as a matter of law and whether it had abused its discretion in formulating both the type and amount of the sanction. *See id.* As a result, we reversed the award of sanctions in *Butler Crockett* and remanded for more detailed findings.

¶ 23 In the instant case, however, the trial court, while still not explicitly pointing to a legal basis, made findings of fact and conclusions of law sufficient for us to make the determination required by *Butler Crockett.* The trial court's findings consisted of twenty-two numbered paragraphs, each setting forth separate facts leading to the sanction imposition. Viewing these findings both individually and as a whole, it is apparent to us that the trial court was exercising its prerogative to assess sanctions under Utah Rule of Civil Procedure 16 to remedy damages suffered by NACM and Lee pursuant to a pretrial scheduling conference.

¶ 24 Rule 16, dealing with pretrial and scheduling conferences, dictates that the trial court, upon motion *or its own initiative,* may order sanctions. Rule 16 indicates that the basis for such sanctions include situations where "a party or a party's attorney fails to obey a scheduling or pretrial order." Utah R. Civ. P. 16(d). The rule permits the trial court to "require the party or the attorney representing him or both to pay the *reasonable expenses incurred* because of any noncompliance with this rule, *including attorney fees,* unless the court finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." *Id.* (emphasis added).

¶ 25 Here, the trial court directed Atkin to notify Lee of a date change for the scheduling conference.

5. On or about April 22, 1996, Mr. Atkin initiated a telephone call to the Court in which Mr. Reece was included but in which Mr. Lee was not included. During said telephone conference, the Court agreed to continue the April 25, 1996, Scheduling Conference. During said telephone conference, *the Court gave Mr. Atkin specific direction to contact Mr. Lee personally and advise him of said continuation.*

(Emphasis added.) This "specific direction" amounted to an informal pretrial order relating to a scheduling conference. The trial court noted several times that "[a]s of 7:00 p.m. April 24, 1996, Mr. Lee had received no notice from Mr. Atkin of the continuance," and that "Mr. Atkin failed to notify Mr. Lee as directed by the Court." By repeatedly stressing Atkin's failure to carry out its direction, the trial court makes it clear that Atkin violated Utah Rule of Civil Procedure 16.

¶ 26 *Butler Crockett* also requires an explanation of how the noncompliance affected either the court or the other party. The trial court makes this clear in its findings of fact, stating:

10. Mr. Lee had to travel to St. George, Utah, from Salt Lake City, Utah, to appear at said Scheduling Conference, a distance of 300 miles, did appear at said Scheduling Conference and then had to return to Salt Lake City, Utah, causing Mr. Lee to be out of his office and unable to apply his efforts to any other client's account for one full day.

Again, in its conclusions of law the trial court explained:

It is reasonable for Mr. Blake S. Atkin personally to pay to Mr. Lee the total sum of $1,264. Said sum should not be the responsibility of Mr. Atkin's clients, the Halls, *because it was Mr. Atkin's failure to properly notify Mr. Lee of the continuance that resulted in Mr. Lee's travel to St. George, Utah.*

(Emphasis added.) Based on the facts contained both in Lee's affidavit and in the trial court's findings of fact and conclusions of law, the Order meets our established guidelines. We therefore reject his second argument.

 ¶ 27 Third, Atkin argues that there was, in fact, no actual legal basis on which sanctions could be imposed. To the contrary, as discussed above, under rule 16, there was in fact a legal foundation upon which sanctions could be awarded in this case. The federal analog to this rule, Federal Rule of Civil Procedure 16(f), reinforces the rule's "intention to encourage forceful judicial management." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1351, at 306 (1990); *see also Arnold v. Curtis,* 846 P.2d 1307, 1310 (Utah 1993). In support of that goal, Utah Rule of Civil Procedure 16 grants the trial court the discretion to impose sanctions where necessary to assure the timely and orderly disposition of the case. *See Arnold,* 846 P.2d at 1310. Based on the foregoing examination of Lee's affidavit and the trial court's findings and conclusions, the trial court has not abused its discretion. We therefore reject Atkin's third argument.

██ ¶ 28 Fourth, Atkin argues that the attorney fees are excessive as imposed, maintaining that Lee failed to disclose why a full eight hours is billed for attendance at a scheduling conference. Again, we disagree. As the trial court found, "Lee is entitled to reimbursement for attorney[ ] fees for one full day's work which should be set at eight hours at his normal rate as established by his affidavit." Lee's affidavit stated that his normal hourly rate was $140, or $1,120 for the day. The trial court found this to be reasonable based upon Lee's affidavit, education, expertise, and other local attorneys' rates. We cannot say that the trial court abused its discretion in concluding an attorney forced to make a 600–mile trip lost eight or more hours of working time; nor can we say the amount awarded is unreasonable, given the facts. We therefore reject the argument that the fees imposed were excessive.

## CONCLUSION

¶ 29 We reverse the trial court's grant of summary judgment in favor of Aquarius and direct the trial court to enter judgment in favor of· the Halls. Accordingly, the Halls' contention that the trial court erroneously dismissed their cross-claim against the County is rendered moot. Furthermore, we affirm the sanction of attorney fees imposed by the trial court against Atkin for his failure to notify Lee of the change in the scheduling conference.

¶ 30 Reversed in part and affirmed in part.

¶ 31 Associate Chief Justice DURHAM, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Chief Justice HOWE's opinion.